409 So.2d 31 (1981)
Fulton THORNTON, Appellant,
v.
PAKTANK Florida, Inc., Appellee.
Nos. 79-2174, 80-42.
District Court of Appeal of Florida, Second District.
December 9, 1981.
As Corrected December 15, 1981.
Rehearings Denied January 29, 1982.
Roger Vaughan, of Wagner, Cunningham, Vaughan, Genders & McLaughlin, Tampa, and Joel D. Eaton of Podhurst, Orseck & Parks, Miami, for appellant.
T. Paine Kelly, Jr., of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee.
OTT, Judge.
Appellant was injured while working on a coal barge appellee had contracted to clean. He sued for negligence, but the trial court *32 directed a verdict in favor of appellee on the ground that appellee was his employer and therefore immune from liability for common law negligence. We reverse.
Appellant was a member of a crew hired by an independent contractor, Gale Porter Temporary Help, for the specific and sole purpose of performing appellee's duties under its contract with the barge owner. The contract between appellee and Temporary Help expressly provided that the workers thus furnished to appellee would not be employees of appellee for any purpose. All the employment and tax records showed Temporary Help as the employer of the workers, and all wages were paid by Temporary Help, which billed appellee at a rate which included the wages, overhead and profit on each worker. The overhead portion of such rate included the premiums which Temporary Help paid for compensation insurance under the requirements of the Longshoremen's and Harbor Workers' Compensation Act. Appellee did not carry compensation insurance covering the crew.
Special work clothes for the crews were provided by Temporary Help, while appellee furnished all necessary tools and also provided the necessary supervision of the work being done. Appellee had no power to fire the workmen, but could send them, or any of them, off the job and back to Temporary Help's office. In such event, employment of the "rejected" worker would be terminated because Temporary Help never hired anyone until a specific request for manpower was received, whereupon new employment forms were prepared, even for those workers who regularly filled Temporary Help's contracts.
The trial court concluded that the undisputed facts established, as a matter of law, appellee's immunity from common law negligence by virtue of the so-called "borrowed employee" doctrine. See, generally, Ruiz v. Shell Oil Co., 413 F.2d 310 (5th Cir.1969), and Gaudet v. Exxon Corp., 562 F.2d 351 (5th Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978), for extensive discussions of the various criteria for determining when a worker, regularly employed by one employer, can become a temporary employee of someone who merely "borrows" him for a specified period or job. The doctrine is predicated on common experience that, under modern business practices, an employee may be employed by more than one employer, even while doing the same work. Beaver v. Jacuzzi Brothers, Inc., 454 F.2d 284 (8th Cir.1972).
The one thing that is clear from all the cases is that it is essential that the borrowed worker actually become the employee, even if only temporarily, of the borrower. If that never occurs, the doctrine never applies. Dugas v. Pelican Construction Co., Inc., 481 F.2d 773 (5th Cir.1973), cert. denied, 414 U.S. 1093, 94 S.Ct. 723, 38 L.Ed.2d 550 (1973). That question usually arises from the opposite side of the coin, when an injured employee attempts to collect workmen's compensation from a "temporary" employer. In section 48.00 of his text, Workmen's Compensation Law, Larson states the qualifications for application of the doctrine: "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, expressly or impliedly, with the special employer, (b) the work being done is essentially that of the special employer, and (c) the special employer has the right to control the details of the work. When all three conditions are satisfied, both employers are liable for workmen's compensation."
The cases relied upon by appellee expressly recognize the principal element of the doctrine, and distinguish contrary results on the basis of the presence or absence of an express or implied contract of hire. Thus, in Maynard v. Kenova Chemical Co., 626 F.2d 359 (4th Cir.1980), the court found temporary workers to be employees of the special employer, and distinguished its previous holding in a similar case, Kirby v. Union Carbide Corp., 373 F.2d 590 (4th Cir.1967), noting that in Kirby a contract between the special employer and the regular employer specifically provided that the workers were to remain employees of the latter.

*33 Our decision in Kirby was premised on the validity of the contractual arrangement between Dupont [regular employer] and Union Carbide.
626 F.2d at 361.
The facts at bench bear an additional similarity to an aspect of Kirby to which Maynard attached great significance. In Kirby, as here, the special employer had not assumed responsibility for payment of workmen's compensation benefits, and Maynard noted that distinction from its own facts, where the special employer had carried workmen's compensation insurance. That same factor seems to have influenced the result in yet another case relied upon by appellee, Huff v. Marine Tank Testing Corp., 631 F.2d 1140 (4th Cir.1980), where the court pointed out that the special employer had covered the temporary employees with workmen's compensation insurance, whereas the regular employer had not. Evidently this arrangement implied an understanding and agreement that the workers were employees of the special employer.
The one case directly in point is Dugas v. Pelican Construction Co., Inc., supra, where the contract between the special employer and the regular employer expressly provided, as does the one at bench, that the workers would not be employees of the special employer "for any purpose." The Dugas court gave that provision paramount significance, and distinguished cases in which such a contract merely provided that the workers were to remain the employees of the regular employer.
In the instant case appellee's president informed appellant's attorney, upon initial contact regarding payment of workmen's compensation benefits, of that contract provision and thereafter adamantly insisted, even in deposition, that appellee was not appellant's employer. Only at trial did appellee's chief executive reverse himself and not only concede but insist that appellant indeed was an employee.
Notwithstanding that repudiation of a clause obviously designed to protect appellee from workmen's compensation liability, which was suddenly perceived as being not too onerous after all, the facts of this case simply do not support the conclusion that appellee ever actually became appellant's employer, or that there was any contract of hire, whether express or implied, between them. We think the case is governed by the reasoning and law enunciated in Dugas.
Accordingly, the judgment is REVERSED and the case REMANDED for trial on the issues of negligence and damages. Obviously, the postjudgment order taxing costs against appellant must be, and is, also set aside.
RYDER, J., concurs.
GRIMES, A.C.J., dissents with opinion.
GRIMES, Acting Chief Judge, dissenting.
In many borrowed servant cases, the real question is which employer actually controlled the employee's work. However, practically all of the borrowed servant cases involving general employers in the business of furnishing temporary help hold that an employee who is covered by his general employer's workmen's compensation cannot claim damages against his special employer for injuries suffered while working on the temporary job. Huff v. Marine Tank Testing Corp., 631 F.2d 1140 (4th Cir.1980); Maynard v. Kenova Chemical Co., 626 F.2d 359 (4th Cir.1980); Beaver v. Jacuzzi Brothers, Inc., 454 F.2d 284 (8th Cir.1972); St. Claire v. Minnesota Harbor Service, Inc., 211 F. Supp. 521 (D.Minn. 1962); Martin v. Phillips Petroleum Co., 42 Cal. App.3d 916, 117 Cal. Rptr. 269 (1974); Highway Insurance Co. v. Sears Roebuck & Co., 92 Ill. App.2d 214, 235 N.E.2d 309 (1968); Renfroe v. Higgins Rack Coating & Manufacturing Co., 17 Mich. App. 259, 169 N.W.2d 326 (1969); Danek v. Meldrum Manufacturing & Engineering Co., 312 Minn. 404, 252 N.W.2d 255 (1977); Wright v. Habco, Inc., 419 S.W.2d 34 (Mo. 1967); Chickachop v. Manpower, Inc., 84 N.J. Super. 129, 201 A.2d 90 (1964); Shipman v. Macco Corp., 74 N.M. 174, 392 P.2d 9 (1964); Daniels v. MacGregor Co., 2 Ohio St.2d 89, 206 N.E.2d 554 *34 (1965); Meka v. Falk Corp., 102 Wis.2d 148, 306 N.W.2d 65 (1981).[1] Probably the reason why the temporary help cases reach this result is that there is seldom any doubt that the special employer is controlling the details of the employment. Obviously, the company furnishing the temporary help is not engaged in the business of the customer to whom it has provided a temporary employee. Thus, a contract for hire with the special employer is implied as the result of the employee having chosen to undertake the temporary job. Maynard v. Kenova Chemical Co.; Wright v. Habco, Inc.
The fact that a special employer does not carry workmen's compensation insurance on a temporary employee is essentially irrelevant. The special employer secures workmen's compensation coverage on the employee by virtue of its temporary help contract with the general employer. The special employer has provided the funds to pay the workmen's compensation insurance premium because the fee charged by the general employer is always set at an amount sufficient to include the cost of the premiums. In Hamilton v. Shell Oil Co., 233 So.2d 179 (Fla. 4th DCA), cert. denied, 237 So.2d 762 (Fla. 1970), which is the only Florida case on the subject, the court could not have reached the result that it did had it not believed that when the special employer contracted for the general employer to furnish workmen's compensation coverage, it had "secured" workmen's compensation coverage on the temporary employee.
This case is close only because the temporary help agreement specified that no employee furnished by Gale Porter Temporary Help could be considered an employee of Paktank for any purpose. However, there are no cases which hold that the characterization given to the employee in the temporary help contract is deemed controlling. On the other hand, in Danek v. Meldrum Manufacturing & Engineering Co., the work order which constituted the temporary help agreement specified that persons furnished by the general employer were the employees of the general employer and not the employees of the special employer. In holding that the special employer was nevertheless immune from a negligence suit by the injured employee, the court said:
The terms of the work order did not change the legal relationship of the parties since the nature of that relationship must be ascertained not from the label given to it by the parties themselves but from the consequences which the law attached to their arrangements and to their conduct.
312 Minn. at 412, 252 N.W.2d at 261.[2] Likewise, in Martin v. Phillips Petroleum Co., the contract, under which the employee was furnished by Plant Maintenance, the general employer, was written so as to preclude the employee from being considered as a special employee of Phillips Petroleum Company for whom he was to work. Nevertheless, the trial court held that the employee was limited to the recovery of workmen's compensation benefits on the premise that Phillips was his special employer. In affirming the judgment, the appeals court found that nothing in the nature of estoppel prevented Phillips from asserting the true employment relationship. The court said:
Even before considering the factual situation which the trial judge impliedly found to be incompatible with the written contract, we note that the labored effort *35 to maintain independence of the two potential employers in itself gives evidence that the independence is fictitious. For example, how can it be believed that work done by laborers shall be for Plant Maintenance's benefit, except of course for the fact that Plant Maintenance expects to be paid by Phillips? What other benefit does Plant Maintenance gain from work done at an oil refinery? And by brief reference to the facts as described below, what does an employee whose work calls for using a jack hammer have to do with the interest of a general supplier of labor? Further, the provision in the contract that the employees shall be deemed to be those of Plant Maintenance, notwithstanding any finding that the work is performed under the direction or supervision of Phillips, appears to be an attempt to control the status of the various parties despite a finding by a court or by the Workmen's Compensation Appeals Board. The contract cannot affect the true relationship of the parties to it. Nor can it place an employee in a different position from that which he actually held.
42 Cal. App.3d at 919, 117 Cal. Rptr. at 271.
Thus, Dugas v. Pelican Construction Co., 481 F.2d 773 (5th Cir.), cert. denied, 414 U.S. 1093, 94 S.Ct. 724, 38 L.Ed.2d 550 (1973), cited by the majority, is not the only case directly on point. Moreover, its precedential value is diminished by the fact that the contract provision in that case was only one of a number of factors the court considered in determining that a special employment relationship had not been established. Specifically, the Dugas court held that the general employer had not relinquished control over the employee and that the special employer did not have authoritative direction over the employee's work. Furthermore, in the later case of Gaudet v. Exxon Corp., 562 F.2d 351 (5th Cir.1977), cert. denied, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978), the same court disapproved the prior emphasis that it had given to the contract between the employers in Dugas. In Gaudet, there were some conflicting provisions in the contract between the employers, one interpretation of which was that Exxon Corporation, for which the employee was working when he was injured, could not be considered to be his special employer. The court held that regardless of the interpretation given to the contract, the trial court had properly determined that Exxon was immune from suit because all other factors demonstrated that Exxon was the employee's special employer.
The situation is the same in the instant case. It is the employment relationship which should be controlling, and not what the parties say it is. Certainly, if Gale Porter Temporary Help had reneged on its obligation to provide Thornton with workmen's compensation insurance, Paktank could not have escaped liability for workmen's compensation coverage simply because its contract with Porter stated that Thornton was not an employee of Paktank. Martin v. Phillips Petroleum Co.; 1C A. Larson, Workmen's Compensation Law § 48.00 (1980). Thornton has received workmen's compensation payments for the injuries he suffered when he was working under the direct supervision and control of Paktank. There is no reason why he should be in a better position than Paktank's regular employees injured under the same circumstances.
I believe the court properly directed a verdict for Paktank.
NOTES
[1] The case of Kirby v. Union Carbide Corp., 373 F.2d 590 (4th Cir.1967), relied upon by the majority, did not involve a general employer whose business was the furnishing of temporary employees to others.
[2] Danek employed the same reasoning to refute an argument also made in the instant case that the special employer was bound by its own misinterpretation of the employment relationship. The court said:

Plaintiff also maintains that Meldrum's response to a letter from plaintiff's counsel which stated that plaintiff "was an employee of Labor Pool" at the time of the accident should be deemed conclusive to establish the legal relationship of the parties. Again, this involves a determination of law and Meldrum is not bound by its own erroneous conclusion.
312 Minn. at 413 n. 3, 252 N.W.2d at 261. See, also, Martin v. Phillips Petroleum Co.