SCHOONOVER, Judge.
This is an appeal from final summary judgments entered in favor of the appellees, D & K Investments, Inc., Protective Insurance Company, Refrigerated Transport Company, Inc., and Transport Indemnity Company, in a motor vehicle negligence action brought by the appellant, Linda Bryant, as personal representative of the estate of David Bryant. The judgments were based upon a finding that the appellant’s exclusive remedy was under the Florida Workers’ Compensation Act. We affirm in part and reverse in part.
On August 10, 1978, David Bryant was killed in Wildwood, Florida, when the tractor-trailer in which he was riding as a passenger collided with a bridge embankment. Workers’ compensation benefits were paid pursuant to chapter 440, Florida Statutes (1979).
The appellant, Linda Bryant, in her capacity as personal representative of her husband’s estate, filed suit against the driver of the truck, Dwayne Berry, the owner/lessor of the truck, D & K Investments, Inc., its liability insurer, Protective Insurance Company, the lessee of the truck, Refrigerated Transport Company, Inc., and its insurer, Transport Indemnity Company.
Suit was also filed against the manufacturer of the truck’s tires, Michelin Tire *283 Company and/or La Manufacturer Fran-caise De Pneumanticques Michelin, but they are not directly involved in this appeal.
The trial court found that both D & K Investments, Inc., hereinafter referred to as D & K, and Refrigerated Transport Company, Inc., hereinafter referred to as RT, were employers of the deceased and therefore immune from suit under the “exclusive remedy” provision of the Florida Workers’ Compensation Act. Final summary judgments were accordingly entered for them and their insurers.
The trial court also held that the deceased’s coemployee, Dwayne Berry, was immune under the same section of the act and entered a summary judgment in his favor. Subsequent to the filing of her notice of appeal, the appellant conceded the correctness of the final judgment entered in Mr. Berry’s favor under the authority of the case of Iglesia v. Floran, 394 So.2d 994 (Fla.1981), and filed a notice of voluntary dismissal of that part of the appeal.
At the time of the accident in question, D & K was in the business of long distance truck hauling of perishable products between Florida and the west coast of the United States. Mr. Berry was D & K’s first driver, and Mr. Bryant was D & K’s helper driver. The company owned, maintained, and paid all taxes and fees in connection with the operation of their trucks. It independently hired, supervised, paid, and when necessary, fired the truck drivers.
Since D & K did not have an interstate commerce commission certificate of public convenience and necessity allowing it to transport commodities in interstate commerce, it leased its trucks and drivers to RT, who had the necessary permit.
Under the lease and collateral agreements entered into between the parties, D & K’s drivers were to remain the employees of D & K, and although RT required them to take road tests and written examinations, they could not hire or fire them. D & K was responsible for meeting all regulatory requirements placed upon RT' by various governmental agencies, and RT had the right to inspect D & K’s operations quarterly to insure its compliance with the federal regulations imposed upon them because of their certificate of public convenience and necessity. While making these quarterly audits, RT’s safety director would review all drivers’ files to be sure that they were meeting all of the requirements of RT.
Under the terms of the lease, D & K was required to pay RT seven percent of its gross income. Subject only to any regulatory requirements placed upon RT by governmental agencies, D & K was to have full control and responsibility for all transportation services, selecting all routes, and for paying all expenses. Workers’ compensation insurance was obtained by D & K, and its carrier paid the workers’ compensation benefits in this case.
It is clear that Mr. Berry and Mr. Bryant were employees of D & K at the time of the accident. § 440.02, Fla.Stat. (1979). Accordingly, the summary judgments entered in favor of D & K and its insurer Protective Insurance Company were proper and are hereby affirmed.
However, we find that RT was not the employer of Mr. Berry or Mr. Bryant and accordingly hold that the trial court erred in entering a summary judgment in favor of RT and its insurer.
RT first contends it was a contractor that entered into a contract of carriage for the transportation of goods for others and that a portion of this work was subcontracted to D & K by the agreements discussed herein. It contends that under these circumstances Florida law regards it as a statutory employer of Mr. Bryant and therefore entitles it to the immunity of section 440.11, Florida Statutes (1979).
RT’s reliance on the case of Motchkavitz v. L. C. Boggs Industries, Inc., 407 So.2d 910 (Fla.1981), is misplaced. The supreme court in the Motchkavitz case held that a contractor, who sublets part of his work to a subcontractor and therefore becomes liable to secure workers’ compensation coverage for employees of his subcontractors, is immune from suit by such employees when the cov *284 erage has been secured either by him or the subcontractor. It is the liability to secure coverage for such employees in the event that the subcontractor does not do so that immunizes a contractor from suit by such employees. However, in the case sub judi-ce, RT was not a contractor who subcontracted a part of its contract to D & K, and therefore is not immune from suit. RT cannot be considered a contractor and thus a statutory employer of Mr. Bryant, within the meaning of section 440.10, since the clear implication of that section is that there must be a contractual obligation on the part of the contractor, a portion of which he sublets to another. As stated in Jones v. Florida Power Corp., 72 So.2d 285 (Fla.1954), at page 289:
To “sublet” means to “underlet”, ... in which it is here used, the effect of subletting is to pass on to another an obligation under a contract for which the person so “subletting” is primarily obligated. The Corporation, under the facts here present, had no primary obligation under a contract which it was passing on to another. It was not, then, a “contractor” within the meaning of the Act.
There has been no showing of a contractual obligation on the part of RT which was sublet to D & K. On the contrary, D & K solicited the contracts and performed them without any interference by RT.
RT also contends that it was a statutory employer under 49 U.S.C. section 304(e)(2). That section provides:
(2) such other regulations as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carriers will have full direction and control of such vehicles and will be fully responsible for the operation thereof in accordance with applicable law and regulations, as if they were the owners of such vehicles, including the requirements prescribed by or under the provisions of this chapter with respect to safety of operation and equipment and inspection thereof, which requirements may include but shall not be limited to promulgation of regulations requiring liability and cargo insurance covering all such equipment.
These government regulations are designed to protect the shipping and highway traveling public, not to facilitate control by a company over the owner/operators of equipment leased to them. The regulations standing alone are insufficient to turn D & K’s drivers into employees of RT. They may be considered in conjunction with other elements of the relationship in determining the status of an individual worker, but they do not necessarily imply the existence of an employer/employee relationship. N.L.R.B. v. A. Duie Pyle, Inc., 606 F.2d 379 (3rd Cir. 1979). Contra White v. Excalibur Ins. Co., 599 F.2d 50 (5th Cir. 1979).
In the case sub judice, there was no express or implied contract between RT and D & K’s drivers, and RT had no control of them beyond that required by government regulation. Nothing impaired the drivers’ independence.
The last contention of RT was that it was a joint employer with D & K and therefore entitled to the immunity of section 440.11.
The supreme court has held that in a proper case two or more corporations can be a joint or common employer of a single employee. Roberts’ Fish Farm v. Spencer, 153 So.2d 718 (Fla.1963). However, in this case Mr. Berry and Mr. Bryant were employees of D & K only. There was no express or implied contract of employment between RT and Mr. Berry or Mr. Bryant and no indicia of control. This court has recently held that even if the borrowing employer fully controlled the detail of an employee’s work, when there is no contract of hire between the employee and the alleged special employer and the contractual arrangements between the two employers expressly provide that the employee is not to be considered an employee of the alleged special employer, the borrowing employer is not the “special employer.” Thornton v. Paktank Florida, Inc., 409 So.2d 31 (Fla. 2d DCA 1981).
In the case sub judice, the lease and collateral agreements entered into between the parties all provide that D & K’s employ *285 ees were not to become employees of RT. Additionally, there was no direction, supervision, or control over the deceased or Mr. Berry. The employment relationship between the drivers and RT did not create an implied contract of employment, and the written agreement between D & K and RT expressly provided they were not to become employees of RT.
We accordingly affirm the summary judgments entered against the appellant in favor of D & K and its insurer and reverse the summary judgments entered in favor of RT and its insurer and remand for proceedings consistent herewith.
BOARDMAN, A. C. J., and SCHEB, J., concur.