445 So.2d 1085 (1984)
Daniel Claude RUMSEY, Appellant,
v.
EASTERN DISTRIBUTION, INC., a Corporation, Appellee.
No. AT-292.
District Court of Appeal of Florida, First District.
February 27, 1984.
S. Perry Penland, Jr., of Penland, Seelie, Morgan & Penland, Jacksonville, for appellant.
Robert Wilhelm of Howell, Liles, Braddock & Milton, Jacksonville, for appellee.
ERVIN, Chief Judge.
Appellant, Rumsey, appeals a summary final judgment, contending the trial court erred in finding Rumsey to be a "borrowed servant" of Appellee, Eastern Distribution, Inc. (Eastern), which finding barred Eastern from suit in tort by virtue of the exclusivity provisions of Florida's Workers' compensation Law. We disagree with his argument and affirm.
Rumsey was hired by Right Hand Man of Florida, a labor pool, to perform manual labor for various companies in Jacksonville. Rumsey would report to Right Hand Man daily and, if a job was available, he would *1086 be given a work order indicating the company he was assigned to and the name of the supervisor he should contact, and he would then be transported to the job site by a Right Hand Man employee. Once there, Rumsey's work would be directed by supervisors employed by the hiring company and he would follow that company's routine as to lunch hours and breaks. All necessary equipment would be supplied by the hiring company, and Rumsey's labors would be controlled by that company during the hours for which he was hired. Right Hand Man retained the exclusive right to fire Rumsey, and it paid him at the end of each work day based upon the hours worked, as reflected on the completed work order form. Right Hand Man in turn billed its customers on a weekly or monthly basis, charging them for the hours worked by each Right Hand Man employee, plus amounts designed to cover Right Hand Man's overhead, including the cost of workers' compensation insurance, as well as to produce for Right Hand Man a profit.
On August 20, 1980, Rumsey was assigned by Right Hand Man to work for Eastern in cleaning the interior of a warehouse. When Rumsey arrived at the job site, he was directed by Eastern's supervisor to climb a scaffold some fifty feet above the floor and to pressure clean the warehouse rafters. Rumsey did so; the safety rail on the scaffold gave way, causing Rumsey to fall to the warehouse floor, breaking his ankle. He collected workers' compensation benefits from Right Hand Man and then filed a complaint, seeking damages for negligence from Eastern. At a pre-trial conference, the trial court granted Eastern's motion for summary judgment, finding that Rumsey was Eastern's "borrowed servant", and such status precluded a tort action against Eastern. Rumsey, as stated, assails this finding, contending that workers' compensation coverage is inapplicable.
The general rule on the question of borrowed servants is set out as follows by Professor Larson in his treatise on workers' compensation:
When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if
(a) the employee has made a contract of hire, express or implied, with the special employer;
(b) the work being done is essentially that of the special employer; and
(c) the special employer has the right to control the details of the work.
When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.
1C Larson, Law of Workmen's Compensation § 48.00 (1982) [Larson]. Rumsey contends that the first part of the above test is not satisfied by the facts before us, i.e., that he did not enter into an express or implied contract for hire with Eastern, and therefore the borrowed servant doctrine does not apply. That argument, however, ignores the fact that the requisite consent to employment "may be implied from the employee's acceptance of the special employer's control and direction." Larson, supra at § 48.10. See also Stuyvesant Corporation v. Waterhouse, 74 So.2d 554 (Fla. 1954) (contract of employment for purposes of borrowed servant doctrine may be implied from circumstances). Rumsey's argument also ignores the large body of factually indistinguishable cases involving labor pools in which the employee has been invariably found to be a borrowed servant and thus precluded from maintaining a tort action against the special employer. See Larson, supra at § 48.23; Fox v. Contract Beverage Packers, Inc., 398 N.E.2d 709 (Ct.App.Ind. 1980); Hoffman v. National Machine Co., 113 Mich. App. 66, 317 N.W.2d 289 (1982); Renfroe v. Higgins Rack Coating & Manufacturing Co., Inc., 17 Mich. App. 259, 169 N.W.2d 326 (1969); Danek v. Meldrum Manufacturing & Engineering Co., Inc., 312 Minn. 404, 252 N.W.2d 255 (1977); Campbell v. Central Terminal Warehouse, 56 Ohio St.2d 173, 383 N.E.2d 135 (1978); English v. Lehigh County Authority, 286 Pa.Super. 312, 428 A.2d 1343 *1087 (1981); Simmons v. Atlas Vac Machine Co., 493 F. Supp. 1082 (E.D.Wisc. 1980). In two such cases, which are factually on point with this case, the borrowed servants were injured from falls from scaffolding on the premises of the special employers. See Maynard v. Kenova Chemical Co., 626 F.2d 359 (4th Cir.1980); Wright v. Habco, Inc., 419 S.W.2d 34 (Mo. 1967). In both cases summary judgments were entered and affirmed on the theory of the borrowed servant doctrine.
Rumsey urges that the case of Thornton v. Paktank Florida, Inc., 409 So.2d 31 (Fla. 2d DCA 1981), is controlling and requires reversal of this case. The facts recited in Thornton do not, however, support this contention. There the employee was, as here, hired by a temporary labor pool, Gale Porter Temporary Help, and was assigned to work for Paktank in cleaning barges. Finding the borrowed servant doctrine inapplicable, the Second District reversed a directed verdict entered in favor of the special employer. The factor motivating the court's determination was a provision in the contract between Porter and Paktank, stating that Porter's workers were not to be considered Paktank employees "for any purpose." Because no similar contractual provision is before us we do not consider Thornton controlling.
Even without this clear factual distinction, the substantial weight of contrary authority would compel us to agree with Judge Grimes' well reasoned dissent in Thornton, which observes that "practically all of the borrowed servant cases involving general employers in the business of furnishing temporary help hold that an employee who is covered by his general employer's workmen's compensation cannot claim damages against his special employer for injuries suffered while working on the temporary job." 409 So.2d at 33 (Grimes, A.C.J., dissenting) (e.s. in original).
AFFIRMED.
BOOTH and ZEHMER, JJ., concur.