478 So.2d 855 (1985)
Avery W. CRAWFORD and Lula Belle Crawford, His Wife, Appellant,
v.
FLORIDA STEEL CORPORATION, Appellee.
No. BC-193.
District Court of Appeal of Florida, First District.
November 8, 1985.
Rehearing Denied December 13, 1985.
*856 William A. Bald of Pajcic, Pajcic, Dale & Bald, Jacksonville, for appellant Avery W. Crawford.
Frank E. Maloney, Jr., Macclenny, for appellant Lula Belle Crawford.
John Moffitt Howell of Howell and Howell, P.A., Jacksonville Beach, for appellee.
SMITH, Judge.
The Crawfords appeal from an adverse summary final judgment in their negligence action against Florida Steel for injuries received by Crawford while on Florida Steel's premises doing repair work. We find that there are triable issues of fact concerning the employment relationship between Florida Steel and Crawford, and Florida Steel's negligent supervision of the repair work. Accordingly, we reverse and remand to the trial court for further proceedings.
*857 Florida Steel needed maintenance work at its steel mill in Baldwin late in the summer of 1980. Robert Hutchins, the mill superintendent at the time, testified that Florida Steel employees usually did the repairs if there was time; if not, Florida Steel hired an outside contractor to assist its employees. Florida Steel must have been running short of time because it hired North Florida Erection Company, Inc. (North Florida), a steel erection company, to help with the maintenance work. There was no written contract covering the maintenance work and North Florida was paid for the work by the hour. Mr. Burnsed, the president of North Florida, supervised his employees on the job, one of whom was the appellant, Avery Crawford.
Willie Brantley, one of Burnsed's three foremen on the job, was assigned to work at the re-heat furnace. Because he was uncertain what maintenance needed to be done on the furnace, Burnsed instructed Brantley to do whatever the Florida Steel people wanted done. Brantley was told that the Florida Steel supervisor could answer his questions about the specifics of the job at the re-heat furnace.
On the day of the accident, Brantley was working at the re-heat furnace with two Florida Steel employees, Robert Kingsley[1] and Robert Odom. Kingsley testified that there was no particular division of tasks among the three men that day, and that they worked together. On the other hand, Brantley testified that it was Kingsley who gave him instructions on what needed to be done at the re-heat furnace.[2] Sometime around the middle of the day, Brantley injured his finger. He told Kingsley he was going to report to his supervisor, Mr. Burnsed, and go to the doctor. Because Brantley's departure left Kingsley shorthanded, Kingsley's supervisor requested that another man be sent to the re-heat furnace.
Crawford, who was welding troughs in another part of the mill, was notified by a Florida Steel employee that he was needed to work at the re-heat furnace to replace the injured Brantley. Crawford accordingly left his work at the maintenance shop and went to assist Kingsley at the re-heat furnace. A few minutes before the accident, Brantley returned from the doctor. Kingsley said that he needed somebody inside the furnace to check the alignment of pipes that were to be welded, and Brantley, in turn, told Crawford to do this. Crawford did not recall anyone telling him what needed to be done or how to do it. Instead, he testified that he knew what had to be done.
While inside the furnace Crawford fell into a hole, which was actually a flume, or duct, and was injured. Crawford had never worked on the re-heat furnace or been inside it before. He did not know about the hole and testified that because it was dark in the furnace, he did not become aware of the hole until his fall. Brantley and Kingsley, on the other hand, knew about the hole.
Employees of contractors working on Florida Steel's premises could get pedestal lights and drop lights from Florida Steel's supply room, as needed for work inside the furnace. There were no lights on inside the furnace, according to Crawford, when he had his accident. In contrast, Kingsley and Brantley testified that there was a light in the furnace, and Kingsley thought it was on. Brantley couldn't remember whether the light was on or off.[3]
*858 Following his accident, Crawford collected workers' compensation benefits from North Florida. He also filed this suit against Florida Steel, alleging that Florida Steel negligently failed to warn him of the dangerous conditions in the furnace. The trial court, however, granted a summary final judgment for Florida Steel based upon a finding that Crawford was either an employee of an independent contractor, North Florida, or a "borrowed servant" of Florida Steel, and in either event could not recover. This ruling is here for review.
Florida Steel has admitted in its brief and at oral argument that genuine issues of fact exist as to Crawford's employment status. The evidence is susceptible to contrary interpretations as to whether Crawford was an employee of Florida Steel with respect to the furnace repair work, an employee of an independent contractor, North Florida, or finally, an employee of joint employers  Florida Steel and North Florida. Nevertheless, Florida Steel contends that despite these genuine issues, they are not material issues because under none of these employment relationships is Crawford entitled to recover. More specifically, Florida Steel argues that if Crawford was an employee of an independent contractor, North Florida, then Florida Steel did not have a duty to warn of the dangerous conditions within the re-heat furnace because the supervisory personnel of North Florida had actual knowledge of the conditions within the re-heat furnace. Horton v. Gulf Power Company, 401 So.2d 1384 (Fla. 1st DCA 1981). Alternatively, if Crawford was a "borrowed servant" working for Florida Steel, then Florida Steel was immune from suit under the exclusive remedy features of the workers' compensation law. Berrier v. Associated Indemnity Co., 142 Fla. 351, 196 So. 188 (1939); Stuyvesant Corp. v. Waterhouse, 74 So.2d 554 (Fla. 1954); and Rumsey v. Eastern Distribution, Inc., 445 So.2d 1085 (Fla. 1st DCA 1984). In the unlikely event that Crawford is the employee of joint employers, see Roberts' Fish Farm v. Spencer, 153 So.2d 718 (Fla. 1963), Florida Steel contends that it is still immune from suit under the exclusive remedy features of the workers' compensation law. We agree that each of the employment relationships, in the abstract, can exist. However, we do not agree that mere categorization of Crawford's employment status here yields a final answer to the question of Florida Steel's potential liability.
Florida Steel is correct that Crawford cannot recover for injuries caused by Florida Steel's negligence if an employer-employee relationship existed between Florida Steel and Crawford. Crawford may recover if a jury could find from the evidence that he was an employee of an independent contractor, North Florida, yet was subject to some supervisory control by Florida Steel at the time of the accident, and Florida Steel negligently exercised its retained supervisory control. For this reason, we conclude that the genuine issues of fact which Florida Steel recognized in its brief and at oral argument are material and the trial court erred in granting summary judgment.
Examining the exclusive remedy features of the Florida Workers' Compensation Law, we find that Florida Steel is immune from suit only to the extent that it was required to carry workers' compensation insurance covering Crawford, or see that it was carried. Section 440.11(1), Florida Statutes (1979). It is the obligation to secure compensation which gives the employer or contractor immunity from suit as a third party tort-feasor. Jones v. Florida Power Corp., 72 So.2d 285, 287 (Fla. 1954).
Under Florida law, an entity is required to provide workers' compensation protection when it is an "actual" employer of workers under its direct supervision and control or when, as a contractor, it sublets part of the contract obligation to others and thereby becomes a "statutory employer" of the subcontractor's employees. Lingold v. Transamerica Insurance Company, 416 So.2d 1271 (Fla. 5th DCA 1982). Florida Steel is clearly not a "statutory employer." We are initially concerned, therefore, only with the question of whether Florida Steel is Crawford's "actual" employer. *859 Resolution of this issue requires us to look to the law of general and special employments. See 57 Fla.Jur.2d, Workers' Compensation, § 47.
A general employer is one who contracts directly with an employee, while a special employer is one to whom the general employer has loaned his employee. Stuyvesant Corp. v. Waterhouse, supra, and Berrier v. Associated Indemnity Co., supra. In this latter instance, the employee is known as a "special employee," or sometimes a "borrowed servant." The courts have generally agreed that the criteria for determining the existence of an employer-employee relationship for purposes of the "borrowed servant" doctrine are:
(1) whether a contract for hire, expressed or implied, exists between the employee and the alleged special employer;
(2) whether the work being done at the time of the injury was essentially that of the alleged special employer; and
(3) whether the power to control the details of work being done at the time of the accident resided in the alleged special employer.
Rumsey, supra; Hamilton v. Shell Oil Company, 215 So.2d 21 (Fla. 4th DCA 1968), later appealed 233 So.2d 179 (Fla. 4th DCA 1970), cert. den., 237 So.2d 762 (Fla. 1970); see generally, 1C Larson, Law of Workmen's Compensation, § 48.00 (1985). The factors referred to are not equal, the first factor being the most important, and the second and third factors being merely indicators of the existence of the first factor. Shelby Mutual Insurance Company v. Aetna Insurance Co., 246 So.2d 98, 101 n. 5 (Fla. 1971). Since the contract for hire to be proved is frequently an implied one, factors showing a consensual relationship such as benefit, right of control and payment of compensation are sometimes considered. Id. at 101.
The first factor (existence of a contract for hire) is essential to the special employee status because the employee loses certain rights when he strikes up a new employment relationship, particularly the right to sue the special employer at common law for negligence. Accordingly, the courts have usually been vigilant in insisting upon a showing of a deliberate and informed consent by the employee before an employment relationship will be held a bar to common-law suit. Further, continuance of the general employment is presumed in any lent-employee situation, and to overcome this presumption, there must be a clear demonstration that a new temporary employer has been substituted for the old. See, 1C Larson, Law of Workmen's Compensation, § 48.10 (1985), quoted with approval by the Florida Supreme Court in Shelby, 246 So.2d at 100, 101.
The Berrier, Stuyvesant and Rumsey cases are relied upon by Florida Steel in support of its contention that Crawford was its borrowed servant. These cases are distinguishable, however, because in each there was a definite arrangement between the general and special employers regarding the employees' services and the employees were aware of these arrangements. In this case, there was no definite arrangement between Florida Steel and North Florida regarding Crawford's services. Further, the special employers in Berrier and Stuyvesant undertook to pay some compensation for the services rendered by the special employee. Here, on the other hand, Crawford was paid by North Florida, not its alleged special employer, Florida Steel. The importance of these distinctions is demonstrated by the Florida Supreme Court's reliance upon them in Shelby, 246 So.2d at 100, in which the court found that no special employee status existed.
Nevertheless, there are some factual similarities between this case and Rumsey which are particularly troublesome, and which preclude our ruling that Crawford was not a borrowed servant as a matter of law. In Rumsey, the employee was hired by Right-Hand Man of Florida, a labor pool, to perform manual labor for various companies in Jacksonville. When a job was available, Rumsey would be given a work order form indicating the company to *860 which he was assigned and the name of the supervisor he should contact. Once on the job site, Rumsey's work would be directed by supervisors employed by the hiring company and he would follow that company's routine as to lunch hours and breaks. The necessary equipment was supplied by the hiring company, and Rumsey's labors were controlled by that company during the hours for which he was hired. Right-Hand Man charged the hiring company on an hourly basis, which amount included enough to cover Right-Hand Man's overhead, the cost of workers' compensation insurance, and a profit for Right-Hand Man.
In this case, although there is evidence that North Florida generally supervised Crawford's work, there is some evidence that on this occasion Florida Steel controlled some aspects of Crawford's work. Also, even though North Florida provided Crawford with the tools to do his welding, Florida Steel provided at least some of the necessary equipment  in particular, the lighting  although admittedly this may have only marginal, if any, significance in resolving the issue of control. Of perhaps greater significance is the fact that North Florida billed for Crawford's work on a per-hour basis, a circumstance which could be viewed consistent with a borrowed-servant status for Crawford. At this state of the litigation we may presume, in the absence of evidence to the contrary, that the hourly fee charged by North Florida included the costs of workers' compensation premiums.[4]
We recognize, on the other hand, that North Florida  a steel erection concern  was not in the business of providing temporary help as was Right-Hand Man. Further, we do not overlook the legal principle, alluded to above, that imposes upon Florida Steel a substantial burden to overcome the presumption that Crawford remained a North Florida employee while doing the maintenance work on Florida Steel's mill. However, based on the circumstances surrounding the occurrence of the accident and the reasonable inferences which might be drawn therefrom, we find that a genuine and material issue still remains for the trier of fact to determine whether in this instance North Florida was supplying Florida Steel with temporary help to perform the maintenance work on its mill. If the fact-finder should decide this issue affirmatively, then Crawford, under the borrowed servant doctrine, could not maintain this tort action against Florida Steel.
We have considered only briefly the issue of whether Crawford was an employee of joint employers, North Florida and Florida Steel. We note in passing that although our supreme court has held that in a proper case two or more corporations can be the joint or common employer of a single employee, Roberts' Fish Farm v. Spencer, supra, the rules developed in the cases dealing with the subject do not permit the imposition of joint liability for workers' compensation benefits on two employers simply because they bear significant relationships to the injured employee. Hamilton v. Shell Oil Company, 215 So.2d at 23, n. 2. Instead, courts have cautioned that a second corporation's control of minor details of a work situation should not be accepted as sufficient to form a consensual relationship of employer-employee. Maige v. Cannon, 98 So.2d 399, 402 (Fla. 1st DCA 1957). We see no difference, from a tort-liability standpoint, whether Crawford was a borrowed servant of Florida Steel, or an employee of joint employers.
*861 The trial court here reasoned that if Crawford was not a borrowed servant, then by the process of elimination, he must have been an employee of an independent contractor; and that, if the latter, his supervisor Brantley's actual knowledge of the dangerous condition in the re-heat furnace must be imputed to Crawford, which in turn would relieve Florida Steel of any liability. Horton v. Gulf Power Company, supra; and Lake Parker Mall, Inc. v. Carson, 327 So.2d 121 (Fla. 2d DCA 1976), cert. den., 334 So.2d 323 (Fla. 1977). However, this analysis of the case by the trial court fails to take into account an important corollary to the rule regarding imputed notice. Notice to the independent contractor or its supervisory personnel of the hazards within the employment area is notice to the independent contractor's employees only where the employer of the independent contractor is not in immediate control of the employment area and does not participate in the operation thereon. 41 Am.Jur.2d, Independent Contractors, § 27. See also, Padilla v. Gulf Power Company, 401 So.2d 1375 (Fla. 1st DCA 1981). The evidence tending to show that Florida Steel retained immediate control of the employment area, particularly the re-heat furnace, and specifically directed the task to which Crawford was assigned, distinguishes this case from the cases relied upon by the trial court in support of its final summary judgment.
It is true that one who engages an independent contractor to perform a job for him will not ordinarily become liable for injuries to the employee of the independent contractor. However, there are two principal exceptions to the rule. First, an employer may be held liable if he interferes or meddles with the job to the extent of assuming the detailed direction of it, and thus becomes the master of the independent contractor's employee. City of Mount Dora v. Voorhees, 115 So.2d 586 (Fla. 2d DCA 1959). This so-called exception is more apparent that real, for, when such control exists, the worker may bear the relation of servant or employee to the employer, rather than independent contractor, or, as in this case, employee of an independent contractor. Peairs v. Florida Publishing Company, 132 So.2d 561, 564 (Fla. 1st DCA 1961). Second, the employer may become liable if he commits some act of negligence for which he should be held liable to the independent contractor's employee, irrespective of the employer-independent contractor relationship. City of Mount Dora v. Voorhees, supra; compare Conklin v. Cohen, 287 So.2d 56, 60 (Fla. 1973). It is this latter exception which may subject Florida Steel to liability should a jury find that Florida Steel negligently supervised the details of Crawford's work, while Crawford was acting as an employee of North Florida, an independent contractor.
We note that the Restatement, Torts 2d § 414, Comment A, provides that an employer may retain a control less than that which is necessary to subject him to liability as master or employer. Specifically, the employer may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to others. This supervisory control does not ordinarily subject the employer to liability, but will if the employer fails to exercise his supervisory control with reasonable care so as to prevent the work which he is ordering to be done from causing injury to others. See 41 Am.Jur.2d, Independent Contractors, § 29.
In sum, we find that there remain genuine and material issues of whether Crawford was in a borrowed servant status at the time of his injury, and if not, whether Florida Steel negligently exercised its supervisory control over Crawford's work at the re-heat furnace so as to become subject to tort liability for Crawford's resulting injuries.
Accordingly, this cause is remanded for further proceedings consistent with this opinion.
MILLS and THOMPSON, JJ., concur.
NOTES
[1] Kingsley was the maintenance fabricator at the mill and as part of his duties was required to repair and/or fabricate whatever was necessary for maintaining the mill.
[2] Specifically, he testified that Burnsed told him that the cross-over pipes needed to be replaced at the re-heat furnace but that he got further instructions from Kingsley about replacing the pipes and welding them up.
[3] Our recitation of these facts is based on the evidence in the record and is necessary to an analysis of the issues. By this recitation, we do not intend to indelibly characterize the relationships between the parties. We do not preclude renewed consideration of these issues, by motion for summary judgment or some other means, based on controlling facts not presently before us.
[4] In his dissenting opinion in Thornton v. Paktank Florida, Inc., 409 So.2d 31, 34 (Fla. 2d DCA 1981), which was recently approved by the Florida Supreme Court in Booher v. Peppridge Farm, Inc., 468 So.2d 985 (Fla., 1985), Judge Grimes points out that the fact that a special employer does not carry workers' compensation insurance on a temporary employee is essentially irrelevant. Instead, the special employer secures workers' compensation coverage on the employee by virtue of its temporary help contract with the general employer. The special employer provides the funds to pay the workers' compensation premium because the fee charged by the general employer is always set at an amount sufficient to include the cost of the premiums.