SMITH, Judge.
This is a dispute between two employers and their respective insurance carriers over who should be responsible for the payment of benefits to the employee, James Barber. The deputy entered an order releasing Aft-erdeck Restaurant (Afterdeck) and its carrier, State Farm Insurance Company, from any obligation to pay workers’ compensation benefits to claimant, and finding Interstate Industrial Park (Interstate) and its carrier, Travelers Insurance Company, responsible for the payment of benefits. We affirm.
Claimant worked as a carpenter at an hourly rate of $8.00 per hour for Interstate until his accident on April 20, 1983. His supervisor at Interstate was Kevin Davis, the son of Edward Davis. Edward Davis is the general partner of the limited partnership which owns Interstate. He and Catherine Sealy owned Afterdeck. Although he is involved in both, Interstate and After-deck are two separate and distinct businesses.
On the morning of the accident, claimant was working on the pole barn on the premises of Interstate. About midmorning, Kevin told claimant that they were going to the Afterdeek Restaurant to help Edward Davis remove a dough mixer. Claimant was paid by Interstate for his time in transit to and from Afterdeck and mileage for the use of his truck on this occasion, as well as on a prior occasion when he was sent to the restaurant to disassemble a pizza oven, a project which had taken approximately 40 minutes. Claimant was at the restaurant to remove the dough mixer even less time than that. His injury occurred when the dough mixer slipped off the tailgate of claimant’s truck and pinned claimant’s right knee between the motor on the dough mixer and the asphalt parking lot.
While at the restaurant on the 20th, claimant took orders mostly from Kevin, his supervisor at Interstate, with one or two orders being given by Edward Davis. Claimant considered himself to be an employee of Interstate, and thought he was being paid by Interstate for the work being done at the restaurant since Interstate paid him on the previous occasion when he worked at the restaurant disassembling the pizza oven.
One week after he injured his knee, claimant received an $8.00 check drawn on the Afterdeck Restaurant account as payment for his services on April 20, 1983. In his testimony, Edward Davis maintained that the check was to pay claimant for removing the pizza oven earlier, and for loading the dough mixer. However, the check reflects only that it was payment for claimant’s services on April 20. The record is not clear whether Interstate also paid claimant for the time he spent at the restaurant on the 20th. Claimant’s pay stub from Interstate was not introduced into evidence and claimant couldn’t remember whether his check from Interstate included payment for the time he spent at the restaurant.
Claimant filed a claim and requested a determination of the party responsible for the payment of benefits. Afterdeck took the position that claimant was not an employee of Afterdeck, or was a casual employee, and was working for Interstate at the time of the accident. Interstate took the position that claimant was a loaned or borrowed employee of Afterdeck engaged in the work of the restaurant at the time of the injury.
The deputy found that claimant was employed by both Interstate and Afterdeck at the time of his injury, yet he was not a “dual employee” because he was not regularly and routinely employed by both Interstate and Afterdeck. She determined that claimant was only a “casual employee” of Afterdeck in that his employment with Aft-erdeck only lasted a matter of minutes and the work to be done was not within the course of the trade or business of his employer — the general purveyance of food to the public. Accordingly, she dismissed any claim against Afterdeck with prejudice and held that Interstate was responsible for the payment of benefits to the claimant. We *854 agree with this result, but disagree as to certain of the deputy's findings.
The deputy commissioner properly found that claimant was an employee of Interstate, not a “dual employee” of Interstate and Afterdeck, and that Interstate is responsible for the payment of workers’ compensation benefits. However, we disagree with the deputy that claimant was also an employee of Afterdeck, albeit a “casual employee.” It is clear, as will be seen from the discussion which follows, that claimant was the employee of Interstate only, and not the employee of Afterdeck.
This case involves the application of the “loaned employee” or “borrowed servant” doctrine. The guiding principle applicable here is that when a general employer lends an employee to a special employer, the special employer becomes liable for workers’ compensation only if: (a) the employee has made a contract of hire, either express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work. The most important question is whether the employee made a contract of hire with the special employer. If this question cannot be answered “yes,” the investigation is closed, and there is no need to go into tests of relative control and the like. 1C, Larson, Law of Workmen’s Compensation, § 48.-10 (1985 ed.).
Although not cited by either party, the Supreme Court’s decision in Shelby Mutual Insurance Company v. Aetna Insurance Company, 246 So.2d 98 (Fla.1971), is particularly instructive on this point. In Shelby the decedent originally worked for T & R Farms but was transferred to T & R Packing. On a day off, he went to the farm to find a wrench he had left there while working for the packing company. While he was on the premises, an individual who was a principal in both companies requested decedent to do some work on machinery owned by the farm. While he was doing so, an explosion ensued, causing his death. Decedent had on occasion done small jobs on the farm while working for the packing company, but only received his regular salary. It was found that there was no express or implied contract to substitute the farm for the packing company as the employer at the time of the injury, and therefore the packing company’s insurance carrier was responsible for the entire amount of the award of death benefits. Similarly, claimant here never made a contract, either express or implied, to substitute Afterdeck for Interstate as his employer, and therefore Interstate and its insurance carrier are responsible for the payment of benefits.[1]
As already stated above, although we disagree with the reasoning of the deputy in arriving at the conclusion that claimant was not a “dual employee,” we nevertheless affirm this conclusion. Since claimant did not have a contract of hire with Afterdeck, he could not have been a “dual employee.” Dual employment requires that he have a contract of hire with both employers. More particularly, dual employment occurs when a single employee is under a contract of hire with two employers, and under the separate control of each, performs services for the most part for each employer separately, and the service for each employer is largely unrelated to that for the other. In such a case, the employers may be liable for workers’ compensation separately or jointly depending on the severability of the employee’s activity at the time of the injury. When the employee’s activities are separable and can be identified with one employer or the other, and this separate identification can *855 clearly be made, the particular employer whose work was being done at the time of the injury will be held exclusively liable. 1C, Larson, Law of Workmen’s Compensation, §§ 48.00, and 48.40 (1982 ed.). See also, Naranja Rock Co. v. Dawal Farms, 74 So.2d 282 (Fla.1954).
Because claimant did not have a contract of hire with Afterdeck, he was not an employee of Afterdeck and the question of whether or not he was a “casual employee” is simply not presented. Section 440.-02(2)(d), Florida Statutes (1981), provides that the term “employee” shall not include a person whose employment is both casual and not in the course of a trade, business, profession, or occupation of the employer. Section 440.02(3), Florida Statutes (1981), defines casual as referring only to employments where the work contemplated is to be completed in not exceeding ten working days, without regard to the number of men employed, and where the total labor costs of such work is less than $100. Casual employment involves a question of coverage and deals with considerations of whether the particular employment should be covered under the workers’ compensation law. 1C, Larson, Law of Workmen’s Compensation, § 51.00, et seq. (1982 ed.). This case does not involve consideration of whether claimant’s employment should be covered under the workers’ compensation law. Instead, this is a case where the claimant’s employment is unquestionably covered under the workers’ compensation law, but a determination must be made of who should be responsible for the payment of benefits. Accordingly, since this case does not present a proper case for the application of the “casual employee” doctrine, we find it unnecessary to discuss the question of whether the deputy erred in narrowly construing the term “course of business” as used in Section 440.02(2)(d).
For the foregoing reasons, the order of the deputy is AFFIRMED.
MILLS and THOMPSON, JJ., concur.

. The Shelby case is distinguishable from this case only in that here, the claimant did receive a payment from Afterdeck one week after the accident. But this payment may be viewed as simply an after-thought on the part of Davis, and more in the nature of a self-protective measure, in the absence of other facts demonstrating an intent to create a bona fide employer-employee relationship with Afterdeck.