MILLS, Judge.
A-l King Size Sandwich Co. and Trans-america Insurance Group (E/C) appeal from an order of the deputy commissioner finding that McRae suffered an injury arising out of and in the course of his employment. We affirm.
In March 1984, the E/C, a food distribution company, was in the process of vacating a storage building on which its lease was due to expire in September 1984. However, because the lease could be assigned to another tenant as soon as the building was emptied of the E/C’s equipment, the E/C was anxious to have that equipment moved and offered it for sale. A cooling unit was purchased by Peter Hachem, the sole proprietor and employee of a small restaurant, with the understanding that he would move the unit from the building.
McRae was supervised in his employment with the E/C as a repair and maintenance man by Hershall Wallen. After Ha-chem purchased the unit, Wallen introduced him to McRae, representing that McRae was the best man to move it. Ha-chem initially looked elsewhere for movers but could locate none willing to take on the job. During his search, he received at least two calls from Wallen urging him to get the unit out of the building and recommending McRae because “he knows the unit and has moved it before; he’ll do it.” Hachem then contacted McRae who agreed *959 to do the job and signed a contract with Hachem to that effect.
The move was scheduled during the time when McRae was on a paid vacation. Wal-len had agreed with McRae that “it would be a good time to take a vacation” and asked him to “get it (the cooling unit) out” during his time off. Despite his vacation status, McRae remained “on call” to perform any repairs which might become necessary. On the morning on which the move was scheduled, McRae was called in by the E/C to perform unrelated repairs. He then proceeded to the storage building, which he had arranged with Wallen to have open so that he could do the job. No representative of the E/C supervised the move or was present in the building. While McRae was atop the cooler attempting to dismantle it, one end collapsed, throwing him to the concrete floor and injuring his wrist and knee. Although his injuries necessitated hospitalization, the E/C contacted his wife about finishing the move.
The E/C contended in response to McRae’s claim for medical benefits that he was not employed by it at the time of the injury but by Hachem. The D/C found that, under a theory of “dual employment”, the injury had arisen out of and in the course of McRae’s employment with the E/C. He based this finding on the circumstances that, at the time of the injury, McRae was being paid by the E/C and Hachem and that, while ostensibly moving the cooler for Hachem, McRae was also doing it at the explicit direction of the E/C.
We affirm the finding of compensa-bility but under the “borrowed employee” theory rather than that of “dual employment”. While the borrowed employee situation may, and dual employment does, involve contracts of hire with both employers, in a dual situation, the employee is under the separate control of each employer and performs services for the most part for each employer separately which services are largely unrelated. Interstate Industrial Park v. Afterdeck Restaurant, 478 So.2d 852, 854 (Fla. 1st DCA 1985). Separate or joint liability of such employers in the event of injury depends on the sever-ability of the employee’s activity at the time of the injury. 1C Larson, Worker’s Compensation Law, § 48.41.
The element of separateness of employer and service performed is not present in the borrowed employee situation, where the employee has a general contract of employment with one employer, but performs a service for a second, “special” employer pursuant to the agreement of the general employer to “lend” the employee. The question to be resolved in the event of injury during the special employment is whether a new, temporary employer has been substituted for the old. Crawford v. Florida Steel Corp., 478 So.2d 855, 859 (Fla. 1st DCA 1985). The special employer becomes liable for compensation only if 1) the employee has made a contract of hire, either express or implied, with the special employer, 2) the work is essentially that of the special employer, and 3) the special employer has the right to control the details of the work. Interstate at 854.
Here, McRae did agree with Hachem, orally and in writing, to move the cooler for a sum of money. However, while stating that this element was the most important of the three factors, the Crawford court also emphasized that “continuance of the general employment is presumed in any lent-employee situation, and to overcome this presumption, there must be a clear demonstration that a new temporary employer has been substituted for the old.” Crawford at 859. In this case, the existence of a contract alone does not overcome this presumption, especially in light of the second factor above, that is, for whom the work is done.
McRae was an employee of the E/C with experience in moving coolers, the E/C sold a cooler which it was anxious to move. The buyer had no mover, the vacation of the building was thereby delayed, and the E/C lent McRae to the buyer to speed up the process. The E/C both urged Hachem to accept McRae and repeatedly spoke with McRae about taking the job. The record *960 strongly supports the inference that the E/C allowed McRae to take a paid vacation to do the work for Hachem.
These facts demonstrate that McRae was loaned not so much to do Ha-chem’s work as to the accomplish the E/C’s end of vacating the building as quickly as possible. Therefore, the McRae/Hachem contract loses its relevance to the issue herein, that is, the intent to temporarily relinquish the general employment for the special. Because that intent was not clearly demonstrated, the presumption of continuation of general employment stands.
Affirmed.
BOOTH, C.J., and WENTWORTH, J., concur.