BOOTH, Judge.
This cause is before us on appeal from the final order below vacating a jury verdict on the ground that appellant was a borrowed servant precluded from suing the employer for negligence. We affirm.
Project Construction Company (PCC) entered into a contract with Air Products and Chemicals, Inc. (AP & C) which required PCC to furnish manpower for certain AP & C projects. PCC paid the salaries, though AP & C was required to reimburse. PCC was also obligated to furnish its own supervisory personnel, and the contract provided that no PCC employee would be an AP & C employee.
Appellant initially worked at AP & C’s plant in Area “A” loading fertilizer. PCC employees supervised this work. However, after several months, appellant interviewed with an AP & C supervisor for a job in Area “B.” The supervisor requested, and PCC agreed, to permanently assign, appellant to Area “B” as a train crew helper. Appellant was never supervised by PCC employees while he was working with the railroad. AP & C employees supervised appellant’s work from then on and provided all the necessary equipment. Appellant testified that he knew that the transfer to Area “B” could lead to a better job as a train crew operator, that he hoped to take advantage of that opportunity, and that he knew he would be supervised by AP & C if he accepted the transfer.
On September 11, 1984, some months after beginning his employment with AP & C, appellant was injured in an industrial accident when he was crushed between two railroad cars on AP & C’s premises. He subsequently filed a negligence suit against AP & C. AP & C moved for directed verdict on the ground that it was a “special employer” and that appellant was a borrowed servant under Section 440.11, Florida Statutes. The trial judge allowed the case to go to the jury, reserving ruling on the motion, and thereafter set aside the verdict in the order under review.
In Shelby Mutual Insurance Company v. Aetna Insurance Company, 246 So.2d 98 (Fla.1971), the Florida Supreme Court stated the three factors determining whether the borrowed servant doctrine applied, to-wit: (1) a contract of hire, either express or implied, with a special employer, (2) work being done that was essentially that of the special employer, and (3) that the special employer had the right to control the details of the work. In the instant case, the parties stipulated to the existence of factors two and three. The stipulation of facts read to the jury was, in pertinent part, as follows:[1]
1. Maxson’s activities on the premises of Air Products were supervised by Air Products employees.
2. Maxson’s training for his work in the railroad operations was provided by Air Products employees.
3. Maxson received workers’ compensation benefits from Project Construction Company and its insurance carrier.
4. AH of Maxson’s duties while employed by PCC were performed on Air Products premises.
*1214 5. PCC provided labor services for Air Products from November of 1983 through August of 1985. During that period of time PCC invoiced Air Products for all of PCC’s expenses and costs for providing labor and services at the plant including workers’ compensation insurance costs.
Under proper circumstances, consent to employment is implied from acceptance of a special employer’s control. Rumsey v. Eastern Distribution, Inc., 445 So.2d 1085 (Fla. 1st DCA 1984). Rumsey notes the existence of a large body of cases involving temporary labor services “in which the employee has been invariably found to be a borrowed servant and thus precluded from maintaining a tort action against the special employer.” Appellant’s testimony, taken with the uncontroverted facts of AP & C’s supervision and control, and the fact that it was AP & C’s work being performed on AP & C’s premises at the time of the accident, establish the special employment relationship.[2]
In the case of Thornton v. Paktank, 409 So.2d 81 (Fla. 2d DCA 1982), the Second District placed great importance on the existence of a contract between the general and special employer such as in the instant case, providing that workers were not employees of the special employer. That decision was disapproved first by this court in Rumsey v. Eastern Distribution, Inc., 445 So.2d at 1087, and then by the Supreme Court in Booher v. Pepperidge Farm, Inc., 468 So.2d 985 (Fla.1985). In Booher, the Supreme Court assumed jurisdiction based on the conflict between Thornton and Boo-her, and approved Booher, holding that the actual employment relationship, rather than the subjective intent of the employers, controls employment status, as follows (Booher, 468 So.2d at 985):
The actual employment relationship rather than the subjective intent of the parties should control in any determination of whether a special employee may sue the special employer for work-related injuries. Booher’s own trial testimony belies his contention that he never consented to an implied contract of hire with Pepperidge Farm. We agree with the district court that Pepperidge Farm was entitled to a directed verdict on this issue as a matter of law.
The stipulated facts in this case establish the existence of factors two and three of the borrowed servant test. These facts, plus appellant’s admitted understanding of the nature of the work and supervision by AP & C, as well as his testimony relative to advancement with AP & C, establish the special employment relationship.
Accordingly, the judgment below is AFFIRMED.
SMITH and NIMMONS, JJ., concur.

. Summary of stipulated facts as set out in main brief of appellant, page nine, is taken from the longer version found in the record at pages 349-351.

. By comparison, in Crawford v. Florida Steel Corporation, 478 So.2d 855 (Fla. 1st DCA 1985), the general employer was not in the business of providing labor services, and the general employer provided most of the equipment and controlled various aspects of Crawford’s work.