George **KIRBY, Jr.,** Administrator of the Estate of George W. Kirby, deceased, Appellant,

v.

**UNION CARBIDE CORPORATION,** a corporation, Appellee.

No. 10584.

United States Court of Appeals Fourth Circuit.

Argued Nov. 3, 1966.

Decided Feb. 13, 1967.

Kenneth L. Coghill, Charleston, W. Va., for appellant.

John H. McCutcheon, Charleston, W. Va. (Palmer & McCutcheon, Charleston, W.Va., on brief), for appellee.

Before SOBELOFF, BOREMAN and J. SPENCER BELL, Circuit Judges.

BOREMAN, Circuit Judge:

The administrator of the estate of George W. Kirby, deceased, brought this action against Union Carbide Corporation (hereinafter Carbide) for the wrongful death of the decedent allegedly resulting from the negligent operation of Carbide's oxygen-supply plant at Belle, West Virginia. The court below granted summary judgment for Carbide, holding that as a matter of law decedent was Carbide's employee and that under West Virginia law Workmen's Compensation is the exclusive remedy of an employee against his employer. Plaintiff appeals, contending that the District Court erred in that it applied an improper test in determining the employee status of the decedent and in holding that Carbide was decedent's general employer and thus immune from suit by virtue of the Workmen's Compensation Act. We reverse and remand for trial.

The facts are not in dispute. Decedent, Kirby, had been employed by E. I. du Pont de Nemours and Company (hereinafter Du Pont) from December 1943 until his death in May 1962. Du Pont was supplied with oxygen necessary to operate its chemical plant by Linde Air Products Company, a division of defendant, Carbide. (References herein to Linde will be understood as including references to Carbide.) On August 24, 1956, Du Pont and Linde entered into a written agreement which provided that Linde would continue to supply oxygen

to Du Pont and that an additional plant for this purpose would be constructed on Du Pont property. Du Pont agreed to lease to Linde the land on which the plant was located for $1.00.

Linde agreed to provide, install, maintain and operate the equipment necessary for this plant. As shown in the opinion below, Article VIII, Section 3, of the contract provides:

"3. DU PONT shall furnish to LINDE from time to time, as required by LINDE necessary labor for the operation (not to exceed 3 men per shift except in emergencies and then when agreeable to DU PONT), and for maintenance and repair of the oxygen plant. All such work is to be carried out under LINDE'S direction. LINDE reserves the right to perform this work with *its own labor* in emergencies. LINDE agrees to pay DU PONT for such labor at the following rates regardless of the rates paid by DU PONT.

"First-class Tradesmen (or repairmen) ..............$2.85 per hour
First-class Operators ............................ 2.725 per hour
Helpers ......................................... 2.29 per hour
Janitors and Laborers ........................... 1.925 per hour

---

"In addition to these rates, DU PONT will be paid for the evening and night shifts a 10¢ and 15¢ per hour shift bonus respectively, time and one-half for overtime, and two and one-half times for holidays observed by the Belle Plant (not to exceed 8 days per year). DU PONT shall also be paid overhead on maintenance and repair type labor at the rate provided in Article VIII—4 herein.

"DU PONT will provide workmen's compensation insurance or its equivalent in conformance with West Virginia compensation laws and will pay the cost of all payroll taxes and employees benefit plans such as vacations, unemployment insurance, etc., for such labor. *Such employees shall remain employees of DU PONT.*" (Emphasis added.)

The above-quoted provisions of the contract were taken from the District Court's opinion. The contract itself was not in evidence but was examined by the court, *in camera,* since objection to the introduction in evidence of the entire contract was sustained. In addition to the above-quoted portions the District Court stated:

"Article XII provides that Du Pont and Linde shall each bear their respec- tive losses and liability arising out of damage or destruction to the property of each as well as any injuries to the employees of each. It is provided, however, that nothing therein contained shall relieve either party from liability to the other resulting from the negligence of either of the parties, except that Linde shall not be liable to Du Pont for any damage to the property or injury to employees of Du Pont caused by the negligence of Linde or its employees in excess of Two Million Dollars in any one casualty. It further provides that in no event shall the negligence of either party be presumed. This particular provision was amended under date of December 10, 1957 by adding the following sentence:

'Any damage to LINDE'S property and/or DU PONT'S property and any injuries sustained by LINDE'S employees caused by any negligent act of omission or commission by any employees furnished by DU PONT to perform services hereunder while performing such services shall be deemed the negligent act of LINDE for purposes of this Article.' "

On August 24, 1961, the decedent, Kirby, pursuant to this contract, was assign-

ed to work at the Linde oxygen plant as a janitor. From that time until his death in May 1962—a period of some eight months—Kirby reported directly each day to the Linde plant. He worked his entire shift at Linde and his activities were at all times under the exclusive control and direction of Linde. His daily tasks were assigned by Linde personnel and it was to Linde that he was responsible for performance of his assigned duties. Linde had no power to discharge Kirby or other workmen supplied by Du Pont. Decedent remained on Du Pont's payroll from the time he was first so assigned until his death, and it was Du Pont who continued to carry his Social Security account, his Workmen's Compensation and his hospitalization and health benefits. However, both Du Pont and Carbide were, with respect to their own employees, subscribers to the West Virginia Workmen's Compensation fund and both complied with the statutory requirements concerning posting and notice.

On May 14, 1962, after cleaning a deactivated oxygen unit, Kirby was directed to return to that area in order to install a disc. While he was so engaged an insulation material which had been released made its way into this unit and Kirby, unable to effect his escape, died as a result of suffocation. The following day, May 15, Du Pont filed an employer's accident report with the State Compensation Commissioner with respect to the death of its employee, Kirby. On May 21, 1962, the Commissioner advised Du Pont that the claim was compensable and that it was being charged to Du Pont's account. Kirby's widow was given an award in the amount of $75.00 per month.

Linde filed no accident report and its Workmen's Compensation account has never been charged with the cost of the award, the burden of the compensation award having been borne exclusively by Du Pont.

Since plaintiff administrator, by reason of the pertinent West Virginia statute [1] was unable to bring suit against Du Pont, he brought this wrongful death action against Carbide. The District Court's finding that decedent was an employee of Carbide is grounded on the fact that, at the time of the accident, Linde had the right of complete direction and control of Kirby's work activities. The court below stated:

"It is clear that Linde had the right to, and in fact did control and direct Kirby in the conduct of his duties not only at the time of his death but for some eight months prior thereto. *It follows as a matter of law* that Kirby was an employee of defendant at the time of his tragic death which precludes any recovery in the present action." (Emphasis supplied.)

The effect of this decision below is to permit Carbide to use a tort concept which originated in an entirely different context in order to avail itself of the protection afforded under the West Virginia Workmen's Compensation law. The use of control as a standard of liability had its genesis in cases involving borrowed servants and is inextricably interwoven with the law of vicarious liability. It has as its purpose the protection of third parties who have been injured by a borrowed servant and who look to his master for compensation under the applicable doctrine of *respondeat superior*. Control is the crucial factor in that instance because the law presumes that he who has control of the servant is the one who benefits from his acts and at the same time has the opportunity, obligation and responsibility to see that the acts are done safely. Denton v. Yazoo & M. V. R. Co., 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 310 (1932); Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed.

1. West Virginia Code, Chapter 23, Article 2, Section 6 (1966) which embodies the Workmen's Compensation law provides "any employer subject to this chapter who shall elect to pay into the workmen's compensation fund the premiums provided by this chapter shall not be liable to respond in damages at common law or by statute for the injury or death of any employee * * *."

480 (1909); American Tel. & Tel. Co. v. Ohio Valley Sand Co., 131 W.Va. 736, 50 S.E.2d 884 (1948); Craft v. Pocahontas Coal Corp., 118 W.Va. 380, 190 S.E. 687 (1937); 44 W.Va.L.Q. 73 (1937); RESTATEMENT (SECOND), AGENCY § 219, comment on subsection (1) (1958).

This is not such a case. For here the harm occurred to the employee himself, *not to a third person,* and it is Kirby's estate which seeks redress for his injuries and death. However, Carbide contends that the "right to control" test is applicable here and relies upon several decisions to buttress its position.

Carbide cites Smith v. Donald Coal Co., 92 W.Va. 253, 115 S.E. 477 (1922), as directly in point and therefore controlling. In that case, decedent was employed by McCall, an engineering firm, as a surveyor. McCall had a contract with Donald Coal Company to survey a mine and prepare maps. While in the mine the decedent was fatally injured. McCall had paid decedent's wages and a premium to the Workmen's Compensation fund based upon his wages. The court held that in the absence of any showing that McCall had control of the manner, times and places of doing the work, there was a *presumption* that McCall was not an independent contractor but was an employee of Donald Coal Company and the decedent, employed by McCall to assist it or to do such surveying, was within the class of the employees of the coal company, was protected by the Workmen's Compensation Act, and his personal representative was precluded from bringing a wrongful death action against Donald Coal Company. It appears that the West Virginia court was primarily interested in the details of the contract in reaching a decision on the question of control and the contract was not before the court. However, control was held to be the decisive element in determining the employee status of the decedent, but the instant case is to be distinguished from *Smith.* Here there is a contract between Du Pont and Linde which unequivocally provides that Du Pont will furnish Workmen's Compensation protection and will pay the cost of payroll taxes and employee benefit plans. In that same section of the contract and immediately following the above-quoted portions of Article VIII, section 3, it is provided that the employees on loan to Linde shall remain the employees of Du Pont.

In *Smith* there is no mention of the compensation award or the identity of the one paying it. In the instant case the cost of the award has been shouldered not by Carbide but by Du Pont. Nor did Linde treat Kirby as its employee at the time of the accident—it left it up to Du Pont to comply with the statutory duty to file the report of the accident involving Du Pont's own employee. The obvious intention of the parties, Du Pont and Linde, as manifested in the circumstances here, was to provide that in several respects, including Workmen's Compensation, the status of Du Pont's employees was *not to be affected or altered* by the fact that they were to be borrowed by Linde.

In other cases relied upon by Carbide the factual circumstances are quite different from those presently before this court. In Myers v. Workmen's Compensation Commissioner, W.Va., 148 S.E.2d 664 (1966), the Supreme Court of Appeals held control to be the critical factor in deciding whether an injured plaintiff was an independent contractor or an employee of the defendant. Plaintiff had been hired by the defendant, Lippert Plumbing Company, a subcontractor, to use his own equipment to make an excavation at a construction job. Plaintiff was held to be an employee of the plumbing company because he was told when to commence the work, was subject to hourly inspections and could be discharged if he did not perform to the satisfaction of the plumbing company. It should be noted that the plaintiff in *Myers* was asserting his status as an *employee* in order to obtain the benefits of Workmen's Compensation and the court held the statute was to be construed liberally in favor of the employee, 148 S.E.2d at 688.

In Spencer v. Travelers Ins. Co., 148 W.Va. 111, 133 S.E.2d 735 (1963), control was held to be determinative of the issue of whether an injured third person was an employee of a doctor who was suing the defendant insurer for reimbursement under an insurance policy. The policy excluded from its coverage any injury to any employee of the insured. A cleaning woman, injured while cleaning plaintiff's office, had been paid $4,300 by the (insured) plaintiff for the injuries incurred. It was held that, since the evidence demonstrated that plaintiff had the right of control, the cleaning woman was an employee of insured within the meaning of the policy clause excluding from coverage employees of the insured. However, the injured employee was neither a party to the suit nor was there any claim for Workmen's Compensation benefits.

Defendant's reliance on this court's decision in Peoples Supply, Inc. v. Vogel-Ritt, Inc., 273 F.2d 933 (4 Cir. 1960), is likewise misplaced. Although that opinion recognizes the supremacy of the control test as found in the decision law of West Virginia it is inapposite here. That action involved a claim by Peoples Supply Company, the general employer, and its insurers, against Vogel-Ritt, for damages resulting from destruction of the plaintiff's mill by fire. Vogel-Ritt, under contract to fumigate plaintiff's mill, attempted to attribute the negligence to Peoples Supply because the persons who caused the loss were employees of the latter on loan to Vogel-Ritt. This court held Vogel-Ritt responsible for the acts of the borrowed employees. There was no question of Workmen's Compensation present nor was there involved an attempt by "employees" to redress injuries which they themselves had suffered.

The decisions which might appear to lend some support to Carbide's position are found in federal cases from other circuits which have come to our attention.

In Krentz v. Union Carbide Corp., 365 F.2d 113 (6 Cir. 1966), and St. Claire v. Minnesota Harbor Service, 211 F.Supp. 521 (D.Minn.1962), it was held that actions in tort by borrowed employees against the borrowing employer (such as Linde here) would not lie because the injured persons were subject to the control of the defendant and thus were "employees" within the meaning of the applicable Workmen's Compensation statutes. However, in neither case was there such a contract as is present before us and in St. Claire the general employer was an employment agency which existed solely for the purpose of providing workers for other employers. Furthermore, the decision in Krentz, which purports to apply Michigan law, is of dubious authority in the light of recent Michigan decisions which appear to have abandoned the control test as a criterion of liability in Workmen's Compensation cases.

Taking a trenchant dissenting opinion as its starting point the Supreme Court of Michigan has expressly discarded such a "legal chameleon" in favor of an economic reality test which seeks to determine if the relationship in question is the type the legislature sought to protect. See Powell v. Appeal Board of Michigan Employment Security Commission, 345 Mich. 455, 75 N.W.2d 874, 878 (1956) (Smith, J., dissenting); Tata v. Muskovitz, 354 Mich. 695, 94 N.W.2d 71 (1959); Goodchild v. Erickson, 375 Mich. 289, 134 N.W.2d 191 (1965). While these ground-breaking decisions are singularly concerned with extending the coverage of the Workmen's Compensation law to situations where the lending employer did not exercise control over its employees the principle expressed therein is pervasive.[2]

The contract (or the excerpted quoted and paraphrased portions thereof which are before us) provides that the employees supplied by Du Pont to Linde *shall remain employees of Du Pont.* Ar-

2. See also the concurring opinion Smith, J., in Schulte v. American Box Board Co., 358 Mich. 21, 99 N.W.2d 367 (1959), which demands the extension of the economic reality test to a factual situation almost identical with that in the instant case.

ticle XII, which the District Court purported to summarize but did not quote, referred to *injury to employees of Du Pont* resulting from Linde's negligence. This provision clearly recognizes that Linde could be held liable for negligence resulting in injury to Du Pont employees without exception since, by the terms of the contract itself, the term "employees of Du Pont" includes those supplied to Linde. The December 10, 1957, amendment of Article XII expressly provides that negligence by any Du Pont employee furnished to Linde resulting in damage to the property of Du Pont or Linde or injuries to "Linde's employees" shall be deemed the negligent act of Linde for the purposes of Article XII. If such workmen furnished by Du Pont were in fact, as now contended by defendant, "employees" of Linde then, under the doctrine of *respondeat superior,* Linde was already legally liable for their negligent acts. This amendment pertained to nothing but contemplated liability for negligent acts of Du Pont's furnished employees and made no reference to injuries which might be sustained by them as a result of the negligence of Linde's regular employees. It seems reasonable to conclude that the contracting parties contemplated that Du Pont employees remained Du Pont employees for *all* other purposes and in instances where liability for injuries to them might be involved. In short, Linde recognized its liability, under West Virginia decisions, for damage or injury to third parties resulting from the negligence of the furnished Du Pont employees but agreed that in all other respects and for all other purposes the furnished employees remained the employees of Du Pont according to the express provisions of the contract.

In view of the facts that the contract between Linde and Du Pont provided that borrowed employees, such as Kirby, were to remain Du Pont employees, that Linde did not treat Kirby as its employee at the time of the accident, and finally, that Linde has assumed no responsibility in connection with the compensation award it would be an affront to our sense of justice to permit Carbide to avoid liability for its alleged negligent acts merely because it possessed the right to direct decedent's work activities. The control test was designed for application to particular factual situations. It was not intended to be the handmaiden of legal casuistry. For this reason the United States Supreme Court has refused to be bound by considerations of control in determining employer-employee relations with regard to the application of social legislation. NLRB v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944) (National Labor Relations Act); and United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) (Social Security Act). The totality of circumstances before us dictates that this is not an appropriate case in which to permit such a tort concept, one designed and invoked to serve a specific and logical purpose, to operate to defeat plaintiff's claim.

We hold that the decedent, Kirby, was not such an employee of Carbide as to preclude his personal representative from seeking redress against Carbide for injuries resulting from its alleged negligence. For the purposes of this case Kirby was an employee of Du Pont. The case will be reversed and remanded for trial.

Reversed and remanded.