CARMEN et al., Appellants,

v.

LINK et al., Appellees.

[Cite as Carmen v. Link (1997), 119 Ohio App.3d 244.]

Court of Appeals of Ohio,
Third District, Logan County.

No. 8-96-24.

Decided April 23, 1997.

*Lamkin, Van Eman, Trimble, Beals & Rourke* and *Timothy L. Van Eman,* for appellants.

*Crabbe, Brown, Jones, Potts & Schmidt, Theodore D. Sawyer* and *Daniel J. Hurley,* for appellees.

HADLEY, Judge.

Plaintiffs-appellants, Daniel Carmen and Cheryl Carmen (collectively, "Carmen"), appeal the judgment of the Logan County Common Pleas Court granting the motion of defendants-appellees, Chris Link, Chambers Leasing Systems, Inc., and TSL, Ltd. (collectively, "appellees"), for summary judgment and dismissing Carmen's complaint.

On June 21, 1994, Chris Link, while driving a tractor-trailer, struck the rear of a tractor-trailer operated by Carmen on State Route 117 in Logan County, Ohio. Carmen suffered severe personal injuries as a result of the incident. At the time of the incident both men were working under employment contracts with TSL, Ltd. ("TSL"), and were operating vehicles owned by Chambers Leasing Systems, Inc. ("Chambers"). The men were working independently from each other.

TSL, a West Virginia corporation, is a labor contracting business that hires and trains people for placement with trucking companies. Chambers, an Ohio corporation, is a trucking company that owns its tractors and trailers, and is licensed as a transportation business. Carmen and Link were hired and trained by TSL and were driving for Chambers at the time of the incident. Every person who had ever driven for Chambers at the time of the incident had been working under an employment contract with TSL.

TSL was responsible for the payment of wages, personal tax deductions, benefits, workers' compensation premiums, and all other compensation issues related to a particular employee. Each week TSL would submit a bill to Chambers for all employee-related expenses, including gross wages, social security, federal unemployment, state unemployment, workers' compensation and service fees. Chambers was responsible for the payment of the invoices on a monthly basis to TSL. After receiving payment from Chambers, TSL would disburse the employee's paycheck and pay the appropriate governmental agencies. Chambers had control of determining the routes and destination of each driver on a day-to-day basis.

In August 1993, TSL hired Carmen to drive a tractor-trailer in Ohio for Chambers. Carmen agreed in writing at the time he was hired to designate West Virginia as the state that would govern his workers' compensation rights and benefits. Carmen also signed an extraterritorial agreement, known as a C–112 form, as required by R.C. 4123.54(B), selecting a state other than Ohio as the binding authority for any injuries or occupational diseases he might sustain. There is no dispute by the parties that the proper forms and procedures were followed to make West Virginia the state controlling Carmen's workers' compensation benefits and privileges.[1]

Carmen has been receiving workers' compensation benefits from West Virginia as a result of the injuries he sustained in the incident on June 21, 1994. On August 9, 1995, Carmen filed his complaint against Link, TSL, and Chambers, alleging negligence by Link, *respondeat superior* and negligent entrustment

---

1. When Link was assigned to drive tractors-trailers in Ohio, in September 1990, he also agreed to a similar contract making West Virginia the state controlling his workers' compensation benefits and privileges.

against Chambers, negligent entrustment against TSL, and loss of consortium against all the defendants. Link filed his answer on September 27, 1995, and Chambers and TSL filed their collective answer on October 11, 1995. On February 7, 1996, Chambers, TSL, and Link collectively filed, by permission of the trial court, an amended answer. On August 15, Chambers, TSL, and Link filed a motion for summary judgment, alleging that the incident occurred between fellow employees, and as such, Chambers, TSL, and Link are immune through workers' compensation immunity. Carmen filed a memorandum in opposition to the summary judgment motion, as well as an addendum to the memo in opposition. Chambers, TSL, and Link filed a reply to Carmen's memorandum in opposition to the motion for summary judgment. Carmen subsequently filed an additional memorandum in response to the reply memorandum filed by Chambers, TSL, and Link. On October 17, 1996, the Logan County Common Pleas Court found the motion for summary judgment filed by Chambers, TSL, and Link well taken, dismissed Carmen's complaint, and found that West Virginia workers' compensation law controlled.

This appeal follows, with Carmen asserting four assignments of error. Before addressing appellants' assignments of error we must first examine our standard of review upon a motion for summary judgment.

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Summary judgment is a procedure designed to cut short the normal litigation process and thus terminate the process when there is no issue for trial. *Murray v. Murray* (1993), 89 Ohio App.3d 141, 144–145, 623 N.E.2d 1236, 1238–1239. Therefore, courts must proceed cautiously and award summary judgment only when appropriate. *Id.* The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Any doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141. Thus, the standard of review of a summary judgment is the same for both a trial court and an appellate court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200.

### Assignment of Error No. 1

"The court below erred by granting summary judgment in favor of defendants Chambers, TSL and Link where the defendants failed to assert the affirmative defense of immunity in their answer to plaintiffs' complaint."

Carmen alleges that appellees failed to assert the affirmative defense of immunity for injury by a fellow servant in their amended answer, and, therefore, have waived the right to assert the defense in this case. The primary assertion in appellees' motion for summary judgment was that appellees were immune from liability for injury by a fellow servant. Appellees contend that the immunity was properly raised as an affirmative defense in their amended answer. Additionally, appellees contend that even if the defense was not properly asserted in the amended answer, the defense was timely asserted in their motion for summary judgment. We must address whether appellees raised the defense of immunity for injury by a fellow servant, and if so, whether the assertion was timely made.

Civ.R. 8(C) states that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively * * * injury by a fellow servant * * * and any other matter constituting an avoidance or affirmative defense."

Civ.R. 8(F) provides that "[a]ll pleadings shall be so construed as to do substantial justice." Additionally, the Ohio Supreme Court has liberally interpreted the provisions of Civ.R. 8(C) and (F) so that the party answering the complaint need only "generically" raise the affirmative defense for it to be effective. *Gallagher v. Cleveland Browns Football Co.* (1996), 74 Ohio St.3d 427, 433, 659 N.E.2d 1232, 1237, fn. 3.

In the present case, appellees assert that the ninth defense of their amended answer establishes the defense of immunity for injury by a fellow servant. Specifically, the ninth defense states that Carmen's complaint "is barred * * * from recovery by virtue of the fact that * * * Carmen received full payment for his alleged injuries through the West Virginia Bureau of Workers' Compensation, thereby precluding [Carmen] from pursuing this action."

Although injury by a fellow servant can provide the basis for receiving payment from a workers' compensation bureau, the assertion that the payment was received by Carmen does not, without more, "generically" raise the affirmative defense of injury by a fellow servant. Workers' compensation funds exist as a means to compensate employees for losses in earning capability as a result of an injury suffered in the course of employment. Injury by a fellow servant is only one of a variety of means that an employee may be injured in the course of employment. Appellees' ninth defense in their amended answer does not raise the affirmative defense of immunity for injury by a fellow servant.

■ Notwithstanding, appellees allege that a Civ.R. 8(C) affirmative defense can be asserted for the first time in a motion for summary judgment. The Ohio Supreme Court has addressed the issue of the effect of failing to plead Civ.R. 8(C) affirmative defenses in a responsive pleading. In the dicta of *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377, the court stated:

"Civ.R. 8(C) deals with affirmative defenses and states that, in pleading to a preceding pleading, a party ' * * * *shall* set forth affirmatively * * * the statute of limitations * * *.' (Emphasis added.) While the word 'shall' indicates the firmness of this pleading requirement, Civ.R. 8 does not state a time period within which an affirmative defense must be pleaded or the effect of failing to plead an affirmative defense. However, it is clear that some sort of concept of 'waiver' is embodied in the requirement of Civ.R. 8(C) that a party 'shall' raise any affirmative defenses in his answer." *Id.* at 3–4, 12 OBR at 3, 465 N.E.2d at 379.

The Ohio Supreme Court has addressed the issue of the time period within which an affirmative defense must be pleaded. "Where the bar of the [affirmative defense] is not presented as a defense either by [a] motion [to dismiss] before pleading pursuant to Civ.R. 12(B), or affirmatively in a responsive pleading pursuant to Civ.R. 8(C), or by amendment made under Civ.R. 15, then the defense is waived under Civ.R. 12(H), and a motion raising the defense at trial is not timely made." *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 69 O.O.2d 350, 320 N.E.2d 668, syllabus. "A failure to utilize any of these three methods for raising an affirmative defense will result in a waiver thereof." *Spence v. Liberty Twp. Trustees* (1996), 109 Ohio App.3d 357, 366, 672 N.E.2d 213, 219; *Mossa v. Western Credit Union, Inc.* (1992), 84 Ohio App.3d 177, 180, 616 N.E.2d 571, 573–574.

A Civ.R. 56 motion for summary judgment is not one of the methods recognized by the court in *Mills* to assert an affirmative defense. The court in *Mills* recognized only that an affirmative defense can be asserted in a prepleading Civ.R. 12(B) motion to dismiss, in an answer, or in an amended or supplemental answer. Therefore, a Civ.R. 56 motion for summary judgment cannot, by its express terms, become a recognized method to assert an affirmative defense for the first time. Civ.R. 56(A) states that "[a] party seeking to recover upon a claim * * * may, at any time *after the expiration of the time permitted under these rules for a responsive motion or pleading* by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof." (Emphasis added.)

By its express terms, a Civ.R. 56(A) motion for summary judgment cannot properly be filed until the time has expired for the filing of a responsive motion

or pleading.[2]

Appellants raise in the ninth defense of their amended answer that Carmen "is barred * * * from recovery by virtue of the fact that * * * Carmen received full payment for his alleged injuries through the West Virginia Bureau of Workers' Compensation, thereby precluding [Carmen] from pursuing this action." Such a defense puts Carmen on notice of an alleged defense of immunity. The immunity simply is not for the defense of injury by a fellow servant. Receipt of workers' compensation benefits is a different and distinct defense of immunity from the defense of immunity for injury by a fellow servant. Therefore, appellees are not precluded from asserting the defense of immunity for receipt of workers' compensation benefits. Additionally, the immunity, if supported by the facts, provides the court with a basis to grant a motion for summary judgment against Carmen and for the appellees that may permissibly claim the immunity.

■ West Virginia, like Ohio, recognizes that workers' compensation is a creature of statute. *Clark v. State Workmen's Comp. Commr.* (1972), 155 W.Va. 726, 728, 187 S.E.2d 213, 215; *Westenberger v. Indus. Comm.* (1939), 135 Ohio St. 211, 213, 14 O.O. 56, 57, 20 N.E.2d 252, 253. Under West Virginia Code 23–2–6:

"Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing * * *."[3]

The Supreme Court of Appeals interpreted W. Va.Code 23–2–6 in *Sydenstricker v. Unipunch Prods., Inc.* (1982), 169 W.Va. 440, 288 S.E.2d 511. The court

---

**2.** Appellees direct our attention to *Mack Constr. Dev. Corp. v. Austin Smith Constr. Co.* (1989), 65 Ohio App.3d 402, 583 N.E.2d 1384, for the proposition that an affirmative defense does not have to be raised in a responsive motion or pleading, but may "be raised in a motion for summary judgment where no prejudice results to the party against whom the motion is directed." *Id.* at 405, 583 N.E.2d at 1386. Although the holding in *Mack* embraces the theory that an affirmative defense can be raised for the first time in a motion for summary judgment, we note from the foregoing that the decision appears to be in direct conflict with the holding of the Ohio Supreme Court and the Ohio Rules of Civil Procedure. Thus, we reject appellees' assertion that they timely raised the affirmative defense, and follow the guidance provided to us from the Ohio Supreme Court and the Ohio Rules of Civil Procedure.

Appellees also cite *Clyborn v. Billenstein* (May 29, 1987), Hardin App. No. 6–86–2, unreported, 1987 WL 12098, for support of the *Mack* decision. *Clyborn* is, however, easily distinguishable from *Mack* and legally similar to the line of cases developed consistent with *Mills*. In *Clyborn*, the affirmative defense of *res judicata* was first asserted in the defendant's Civ.R. 12 preanswer motion to dismiss, one of the proper methods to assert an affirmative defense.

**3.** For treatment of R.C. 4123.74, the counterpart to W.Va.Code 23–2–6, see *McPherson v. Cleveland Punch & Shear Co.* (C.A.6, 1987), 816 F.2d 249; *Bankers Indemn. Ins. Co. v. Cleveland Hardware & Forging Co.* (1945), 77 Ohio App. 121, 32 O.O. 395, 62 N.E.2d 180.

stated that "[w]here the right of contribution is initially grounded in common liability in tort, courts have held that a joint tortfeasor employer is immune from a third-party contribution suit because he is initially immune from tort liability to his injured employee by virtue of the workmen's compensation statutory bar of such tort actions." *Id.* at paragraph six of the syllabus.

There can be no dispute in the present case between the parties that TSL was Carmen's and Link's employer. Both men signed contracts of employment with TSL, not Chambers. It is not disputed that TSL paid the men their wages, controlled the decision as to which trucking company the men drove for, trained the men, and contributed the appropriate premiums to the West Virginia Workers' Compensation Fund and other governmental agencies. TSL pled in its amended answer that it was immune from liability by virtue of the fact that Carmen received the benefits of the West Virginia workers' compensation system. If TSL had not contributed the appropriate premiums, Carmen would not have been able to receive these benefits.

Construing the facts of this case in a light most favorable to Carmen reveals that TSL is immune from liability in the current action by virtue of the workers' compensation statutory bar of such tort actions against employers.

Carmen alleges in his second assignment of error:

"The common pleas court erred in finding that Chambers was immune under West Virginia law."

Carmen alleges that Chambers is not entitled to receive the benefits of the West Virginia workers' compensation law because Chambers did not pay any premiums into the West Virginia workers' compensation system or otherwise comply with West Virginia law. If Chambers is not entitled to receive the benefit of the workers' compensation law as an employer, it cannot claim the defense of immunity for receipt of workers' compensation benefits as set forth in appellees' amended answer.

As we stated above, W.Va.Code 23–2–6 grants immunity for damages at common law or by statute to an employer from a suit by an employee if the employer makes direct payment of premiums for the employee into the West Virginia Workers' Compensation Fund. In the present case, Chambers, an Ohio corporation, did not make any premium payments, nor was it a subscriber to the West Virginia Workers' Compensation Fund. Additionally, Carmen alleges that he was an employee of TSL, not Chambers.

We must first determine whether Chambers was an employer under West Virginia workers' compensation law. If Chambers qualifies as an employer, we may then determine whether ,Chambers's failure to make direct payment of premiums to the West Virginia Workers' Compensation Fund still permits

Chambers to assert the defense of immunity from liability in a common-law suit for Carmen's alleged injuries.

■ "The loaned servant doctrine provides that an employee directed or permitted to perform services for another 'special' employer may become that employer's employee while performing those services. Restatement (Second) of Agency § 227 (1958). The doctrine is based on the premise that an employee may have more than one employer while doing a specific act." *Maynard v. Kenova Chem. Co.* (C.A.4, 1980), 626 F.2d 359, 361–362. In *Maynard*, the court noted that the employee, "who was in the general employment of Manpower [Temporary Services], was directed to perform services for Kenova [Chemical Company]." *Id.* at 362. The present case is factually similar to *Maynard* with regard to the fact that Carmen, who was in the general employment of TSL, was trained and directed to perform services for Chambers. Under the authority of *Maynard,* Chambers became Carmen's "special employer."

■ " 'When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

" '(a) the employee has made a contract of hire, express or implied, with the special employer;

" '(b) the work being done is essentially that of the special employer; and

" '(c) the special employer has the right to control the details of the work.

" 'When all three of the above conditions are satisfied in relation to both employees, both employers are liable for workmen's compensation.' " *Id.*, 626 F.2d at 362, quoting 1A Larson, Workmen's Compensation Law, Section 48.

In the present case when Carmen accepted employment with TSL, he also agreed to perform the necessary services for TSL's customers. The services performed by Carmen were always services for the special employer, and Chambers, as the special employer, had the right to control the details of the services performed. This is sufficient to establish an implied contract for services between Carmen and Chambers. See *Maynard*, 626 F.2d at 362; *Chickachop v. Manpower, Inc.* (1964), 84 N.J.Super. 129, 136–138, 201 A.2d 90, 95. Therefore, Chambers is liable under the West Virginia's Workers' Compensation Act. Chambers was not, however, a subscriber to the West Virginia Workers' Compensation Fund.

The Supreme Court of Appeals of West Virginia has, however, been willing to extend the defense of immunity from suit to employers who subscribe to the Ohio Workers' Compensation Fund rather than the West Virginia fund. *Pasquale v. Ohio Power Co.* (1992), 187 W.Va. 292, 418 S.E.2d 738. Under the doctrine of comity, the court recognized that an Ohio employer that subscribes and is in good

standing with the Ohio Workers' Compensation Bureau was entitled to the same immunity from suit as a West Virginia employer that subscribes and is in good standing with the West Virginia Workers' Compensation Bureau. *Id.* at 302, 418 S.E.2d at 748.

■ In the present case the evidence demonstrated that Chambers was an employer in good standing and had paid its premiums to the Ohio Workers' Compensation Bureau for the period of time relevant to the present action.[4] Chambers as a special employer in good standing with the Ohio Workers' Compensation Bureau is entitled to the same defense of immunity as a West Virginia employer in good standing with the West Virginia Workers' Compensation Bureau. Therefore, pursuant to W.Va.Code 23–2–6, Chambers, like TSL, is immune from liability in the current action. Carmen's second assignment of error is overruled.

### Assignment of Error No. 3

■ "The common pleas court erroneously applied the fellow-employee immunity doctrine."

Carmen alleges that in his third assignment of error that he was an employee of TSL, but that Link, the person who struck Carmen, causing his alleged personal injuries, was an employee of Chambers. This assertion is made even though the two men have virtually identical employment contracts. Carmen, directing our attention to Ohio case law, contends that the two men were not fellow employees, and the trial court's application of the fellow-employee doctrine was erroneous. Carmen's reliance on Ohio law is simply misplaced.

W.Va.Code 23–2–6(A) provides:

"The immunity from liability set out in [23–2–6] shall extend to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention."

As we have stated, both the general employer, TSL, and the special employer, Chambers, were immune from suit through the application of W.Va.Code 23–2–6. The evidence, construed in a light most favorable to Carmen, demonstrates that both men were employed by TSL and were assigned to drive tractor-trailers for

---

4.  See *Bridges v. Natl. Eng. & Contracting Co.* (1990), 49 Ohio St.3d 108, 117, 551 N.E.2d 163, 171 (where the court stated "that once the Industrial Commission has certified that an employer has established industrial coverage and paid its premium, the employer is a complying employer as a matter of law. Such employer's failure to have included a particular injured employee in a required payroll report does not deprive the employer of its statutory immunity from a civil action brought by the employee.").

their special employer, Chambers. It is undisputed that both men were operating within the course and scope of their employment at the time of the accident. Carmen does not allege that Link inflicted injury with deliberate intention. Therefore, because Chambers and TSL are immune from liability as set forth in W.Va.Code 23–2–6, Link also enjoys the same immunity from liability pursuant to W.Va.Code 23–2–6(A).

This decision is supported by West Virginia case law. Specifically, the West Virginia Supreme Court of Appeals has held that "[b]y reason of the provisions of Sections 6 and 6a, Article 2, Chapter 23 of Code, 1931, as amended, an employee of a subscriber to the workmen's compensation fund who negligently injures a fellow employee during the course of their employment is not liable to respond in damages to the injured fellow employee for the personal injuries thus caused to him." *Bennett v. Buckner* (1966), 150 W.Va. 648, 149 S.E.2d 201, paragraph two of the syllabus; *Redden v. McClung* (1994), 192 W.Va. 102, 450 S.E.2d 799, paragraph one of the syllabus.

Carmen's third assignment of error is overruled.

## Assignment of Error No. 4

■ "The lower court's application of the immunity defenses is unconstitutional."

Carmen contends that application of the West Virginia workers' compensation law immunity granted to employers and fellow employees violates the Ohio Constitution "due course of law" provision and the Due Process Clause of the United States Constitution. Carmen bases his assertion on the belief that he was an innocent third-party victim who was injured by an employee acting in the course and scope of his employment. Carmen is unable, however, to direct this court to any statutory or case law demonstrating the validity of his assertions.

The immunity protecting appellees, as we have stated numerous times in this opinion, provides that any employer who subscribes to the West Virginia Workers' Compensation Fund is not liable in damages at common law or by statute for the injury or death of any employee, *however occurring.* W.Va.Code 23–2–6. This immunity extends to an employer's employees if the injury is incurred in the furtherance of the business. W.Va.Code 23–2–6(A). The immunity is not the fellow-employee immunity. Rather, it is immunity for contribution to the workers' compensation fund.

This immunity for contribution to the workers' compensation fund also appears in the Ohio Constitution. Section 35, Article II of the Ohio Constitution provides:

"For the purposes of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such

workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employer, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. *Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law \* \* \* shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease \* \* \*.*" (Emphasis added.)

Likewise, R.C. 4123.74 provides:

"Employers who comply with section 4123.35 of the Revised Code [payment of premiums] *shall not be liable to respond in damages at common law or by statute for any injury \* \* \* received \* \* \** by any employee in the course of or arising out of his employment \* \* \*." (Emphasis added.)

Additionally, R.C. 4123.741 provides a similar immunity from suit for fellow employees.

Clearly, the type of immunity found in the West Virginia statutes granting immunity to employers and fellow employees for the employer's contribution to the workers' compensation fund does not violate the Ohio Constitution or statutory law. We are able to make this determination on the constitutionality of the West Virginia workers' compensation provisions because of the similarity between the Ohio and West Virginia provisions. "The workmen's compensation law of Ohio, as enacted in the state Constitution and statutes, does not violate individual protections afforded by the United States Constitution." *Allen v. Eastman Kodak Co.* (1976), 50 Ohio App.2d 216, 4 O.O.3d 179, 362 N.E.2d 665, syllabus.

Additionally, the Supreme Court of Appeals of West Virginia has stated:

"This statutory immunity of a co-employee is not violative of the due process provisions of the State and Federal Constitutions because, like the employer, a co-employee is involved in a compromise of rights; among employees, the *quid pro quo* is that each employee surrenders his common law right to bring tort actions against other employees in return for immunity to their tort suits." *Deller v. Naymick* (1985), 176 W.Va. 108, 111, 342 S.E.2d 73, 76; see, also, *Wisman v. William J. Rhodes & Shamblin Stone, Inc.* (1994), 191 W.Va. 542, 543, 447 S.E.2d 5, 6.

In the present action, the fact that Carmen and Link were not working together does not obliterate the immunity granted to employers and employees. W.Va.Code 23–2–6 grants the immunity to the employers and employee for the injury, however occurring. Therefore, regardless of whether Carmen and Link were working together, they were both employed by the same companies, and the

"*quid pro quo* is that each employee surrenders his common law right to bring tort actions against other employees in return for immunity to their tort suits." *Deller v. Naymick,* 176 W.Va. at 111, 342 S.E.2d at 76.

It is important to remember that Carmen did receive compensation from the West Virginia Workers' Compensation Bureau for the injuries he sustained in the incident with Link. The purpose of the workers' compensation bureau has been upheld, and an injured employee has been compensated for the injuries sustained.

For the above stated reasons, Carmen's fourth assignment of error is not well taken. With no genuine issue of material fact in dispute, the Logan County Common Pleas Court properly granted summary judgment to appellees. Therefore, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

EVANS, P.J., and SHAW, J., concur.