**Billie L. RICHARDSON, Plaintiff,**

v.

**CENTURY PRODUCTS, INC., Defendant.**

**No. 5:00CV2291.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 23, 2001.

---

David A. Van Gaasbeek, North Canton, OH, for Plaintiff.

A. Patricia Diulus-Myers, Jackson, Lewis, Schnitzler & Krupman, Pittsburgh, PA, for Defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

Defendant Century Products, Inc. moves this Court for summary judgment ("Century," Doc. No. 14). Plaintiff Billie L. Richardson ("Richardson") brings this action for wrongful discharge as a result of sex discrimination and retaliation for reporting sexual harassment in violation of 42 U.S.C.

§§ 2000e *et seq.* (Title VII). Richardson also asserts several state causes of action alleging wrongful discharge as a result of sex discrimination, retaliation for reporting sexual harassment, and violation of public policy prohibiting sex discrimination and retaliation in violation of O.R.C. §§ 4112.02(A) & 4112.99.

In its motion for summary judgment, Century argues that it was improperly named as a defendant. More particularly, Century states that because Richardson was a temporary employee hired through Manpower, an employment agency, Richardson does not meet the definition of employee under Title VII or the Ohio Revised Code.

For the reasons that follow, Century's motion for summary judgment is denied.

## I. Background

Century is a customer of Manpower—an employment agency who places individuals with its customers on a temporary or temporary-to-permanent basis. Richardson, an employee of Manpower, began working for Century on August 5, 1999 at its plant located in Canton. Manpower assigned Richardson to the position of machine/material handler. Richardson worked for Century until August 29, 1999, at which time her work assignment was terminated by Century.

All communications regarding the terms of the assignment with Century were made through Manpower. Manpower told Richardson when to report to work, what her job schedule was, and what job duties she was to perform. Century adds that it did not pay her wages or benefits. Rather, these were paid by Manpower. In addition, Century did not withhold taxes or social security deductions.

During the course of her employment, Richardson claims she was continually subjected to sexual harassment by a coworker of Century. According to Richardson, the coworker (1) made several comments in front of Richardson dealing with issues of going out, sexual activity, sexual functions, lesbianism, and frigidity, (2) asked her out on several occasions stating he had been in prison for a considerable period of time and had not had a woman for a while, (3) offered to have sexual relations with her and called her frigid when she refused, (4) touched and grabbed parts of Richardson's anatomy without her consent, and (5) threatened to rape her when she refused his advances. As a result of this harassment, Richardson states it was increasingly difficult to work in the department. Richardson alleges to have complained about this harassment to her supervisors.[1]

Richardson's work assignment with Century was terminated by Century on August 29, 1999. On September 9, 1999, Richardson filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission alleging sex discrimination against Century. A right to sue letter was issued to Richardson by the EEOC on June 15, 2000. Richardson then filed this action on September 11, 2000.

---

1. It is unclear whether the supervisors Richardson complained to were from Century or from Manpower. Richardson's response to Century's motion for summary judgment states that she asked Defendant's agents (presumably Manpower) to discipline the male coworker, but the supervisors did nothing to stop the harassment. During the case management conference, Richardson indicated that she complained to supervisors of Century.

Century's knowledge of the alleged sexual harassment, however, is not at issue because Century has not addressed the merits of Richardson's sexual harassment claim. Accordingly, the Court will not address this issue or any other elements necessary to establish a prima facie case of sexual harassment.

## II. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 888–89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts ... earlier deposition testimony." *Reid v. Sears Roebuck & Co.,* 790 F.2d 453, 460 (6th Cir.1986) (citing *Biechele v. Cedar Point, Inc.,* 747 F.2d 209, 215 (6th Cir.1984)). Further, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

## III. Discussion

Title VII and the Ohio Revised Code define the term employee as an individual employed by an employer. The courts have further defined the term by examining the factual circumstances and applying what have been coined the "economic realities test," the "common law agency relationship test," or a combination of both tests.

■■■ An employee under the economic realities test is one who is economically dependent for his or her livelihood on the business to which he or she renders service. *See Dake v. Mutual of Omaha Ins. Co.,* 600 F.Supp. 63 (N.D.Ohio 1984). Factors to be considered include: (1) the parties' view of their relationship; (2) the hiring and termination methods; (3) the withholding of taxes and social security deductions; (4) the payment of benefits; (5) the opportunities for advancement; and (6) the permanency of the relationship. The common law agency relationship test considers the following factors: (1) the duration of the relationship between the parties; (2) the hiring party's right to assign project; (3) the method of payment; and (4) the hiring party's payment of taxes and benefits on behalf of the individual. *See Johnson v. City of Saline,* 151 F.3d 564 (6th Cir.1998). Both tests, however,

consider the entire relationship between the parties.

■ The question of whether Richardson was an employee of Century for purposes of Title VII is a question of federal law. While the Court is required to analyze the economic realities of the situation viewed in light of the common law principles of agency, the extent of the employer's right to control the means and manner of the worker's performance is the most important factor.

■ This case presents a unique problem not faced in single employer situations. With the expansion in the temporary help industry, the courts have had to face unique problems presented by the temporary employment relationship. In order to resolve the issue of who is the employer or, as in this case, who is an employee of a particular employer, the Court must examine the relationship between the temporary agency, Manpower, and the employer, Century in relation to one another and in relation to the plaintiff.

As the Court understands the situation, Century would have a contract with Manpower and would be customer of Manpower.[2] Century would contact Manpower when it needed a position filled and describe the position and the necessary qualifications. Manpower would then review the files of its employees or accept applications from individuals in an attempt to provide Century with a qualified employee. It is Century, not Manpower that determines the department or area for which it needs a temporary employee. Although Manpower tells the employee when to report for work and how long the assignment will run, these decisions are originally made by Century. Despite the fact that

Manpower is responsible for paying the employee and withholding all taxes and deductions, Century pays Manpower enough to compensate for the employee's wage and the fee charged by Manpower. For instance, if the employee is paid $6.25 per hour, Century would pay Manpower $8.50 per hour whereby Manpower would make $2.25 per hour for providing that employee to Century. Accordingly, that Richardson was paid directly by Manpower is not conclusive that she was solely its employee. The fact that Century determines the position that needed filled and tells Manpower the hours an individual would be required to work permits an inference that Richardson was an employee of both Manpower and Century.

■ At common law, the status of a person employed through a temporary employment agency like Manpower would be determined under the loaned servant doctrine. The loaned servant doctrine provides that "an employee directed or permitted to perform services for another 'special' employer [*i.e.,* Century] may become that employer's employee while performing those services." *Maynard v. Kenova Chem. Co.,* 626 F.2d 359, 361 (4th Cir.1980) (per curiam) (citing Restatement (Second) of Agency § 227 (1958)). In *Maynard,* the court applied the loan servant doctrine and determined that a Manpower temp was an employee of the special employer for purposes of state workers' compensation law. *See id.,* at 361–62; *see also St. Claire v. Minnesota Harbor Serv., Inc.,* 211 F.Supp. 521 (D.Minn.1962) (involving a Manpower temp and reaching the same conclusion).

■ Applying the loan servant doctrine to this case, the Court is convinced that Richardson was an employee of both Manpower and Century. The Court is satis-

---

**2.** The parties do not dedicate much time to explaining the process involved in obtaining temporary employees from Manpower. The explanation that follows is based on the Court's own understanding and basic common sense.

fied that the requisite showing of control has been made. In addition, this result makes complete sense from a policy standpoint. If this were not the case, employers like Century could circumvent federal law forbidding discrimination by hiring all of its employees through temporary employment agencies such as Manpower. This is not to say, however, that all temporary workers are employees of both the temporary agency and the special employer or customer of the temporary agency for the Court can envision situations where the requisite control is lacking.

### IV. Conclusion

In light of the foregoing, Century is not an improperly named defendant. Accordingly, Century's motion for summary judgment is DENIED. This determination, however, has no effect on the burden on Richardson to make a prima facie case of sexual harassment. Because the parties did not address the merits of Richardson's sexual harassment claim, this issue is not properly before the Court.

IT IS SO ORDERED.